795 S.E.2d 40

**PEE DEE HEALTH CARE, P.A., Appellant–Respondent,**

v.

**ESTATE OF Hugh S. THOMPSON, III, Respondent–Appellant.**

**Appellate Case No. 2014–001275**
**Opinion No. 5451**

Court of Appeals of South Carolina.

Submitted March 24, 2016
Filed November 2, 2016
Rehearing Denied February 21, 2017

558

560

James M. Griffin, of Griffin & Davis, LLC, and Ariail King, of Lewis Babcock LLP, both of Columbia, for Appellant–Respondent.

J. René Josey, of Turner Padget Graham & Laney, P.A., of Florence, and John Jay James, II, of Darlington, for Respondent–Appellant.

WILLIAMS, J.:

In this civil matter, Pee Dee Health Care, P.A. (PDHC) appeals the circuit court's award of sanctions to the estate of Hugh S. Thompson, III (the Estate) pursuant to Rule 11, SCRCP. PDHC argues the court erred in failing to dismiss the Estate's motion for sanctions as untimely, granting Rule 11 sanctions when PDHC's filings and arguments to the court were not frivolous, awarding sanctions for the thirty hours the Estate's counsel spent responding to discovery requests served upon third parties, not reducing the award for the time the Estate's counsel spent preparing the sanctions motion, and ignoring the Estate's inequitable conduct when deciding to grant sanctions. The Estate cross-appeals, arguing the court erred in concluding its claim for sanctions under the South Carolina Frivolous Civil Proceedings Sanctions Act[1] (the FCPSA) was untimely and not awarding additional sanctions. We vacate in part and affirm in part.

## FACTS/PROCEDURAL HISTORY

Although this case has a long procedural history, the instant appeal arises out of a sanctions order the circuit court entered against PDHC after this court issued a remittitur in the case. PDHC, a professional medical association doing business in Darlington, South Carolina, formerly employed Thompson as a medical doctor in its clinic from late 1998 to 2000. In exchange for his salary, Dr. Thompson assigned PDHC the rights to his Medicare payments, and PDHC billed Medicare for his services.

Several years before Dr. Thompson began working for PDHC, the South Carolina Board of Medical Examiners (the Board) suspended his medical license and, as a regulatory requirement, he was excluded from the Medicare program by the Medicare Office of the Inspector General (OIG). Although the Board later reinstated Dr. Thompson's medical license in 1998, he failed to seek removal of his name from OIG's list of excluded providers until 2002. In 2007, the Centers for Medicare and Medicaid demanded that PDHC return over $200,000 in benefits it collected while Dr. Thompson was on the excluded provider list.

---

1. S.C. Code Ann. §§ 15–36–10 through –100 (2005 & Supp. 2015).

Following an unsuccessful federal administrative appeal, PDHC filed an action in probate court against the Estate in 2010, seeking reimbursement for the money it was required to pay back to Medicare. The Estate disallowed the claim, and PDHC removed the action to circuit court. Subsequently, the Estate sought to disqualify PDHC's attorney, Tony R. Megna, on the ground that—as PDHC's chief executive officer—he was a necessary fact witness in the case. The court agreed and disqualified Megna in an order dated April 15, 2011. PDHC filed a motion to alter or amend the disqualification order on May 2, 2011.

The Estate and PDHC then filed cross-motions for summary judgment. To avoid any potential prejudice to PDHC, the circuit court allowed Megna to appear for the limited purpose of arguing the pending summary judgment motions at the July 19, 2011 hearing before it ruled upon PDHC's motion to alter or amend the disqualification order. The court subsequently denied PDHC's motion to alter or amend its disqualification order on August 15, 2011. In its order, the court quashed all motions, subpoenas, and filings made subsequent to June 17, 2011, that contained only Megna's signature.

On September 1, 2011, the circuit court issued an order granting summary judgment in favor of the Estate, finding PDHC's fault for not satisfying its nondelegable duty to ensure the proper credentialing of its employee was dispositive as to all causes of action. The court later dismissed PDHC's motion to alter or amend the summary judgment order as void ab initio because Megna's signature was the only one to appear on the motion in violation of the court's disqualification order.

PDHC filed various appeals with this court regarding the circuit court's summary judgment order, disqualification order, and order dismissing PDHC's appeal from the probate court. This court consolidated the appeals and issued an unpublished opinion on July 3, 2013, in which it dismissed PDHC's appeal of the summary judgment order as untimely, found the disqualification issue was moot, and affirmed the circuit court's dismissal of PDHC's appeal of the probate court's order. *See Pee Dee Health Care, P.A. v. Thompson*, 2013–UP–311, 2013 WL 8538755 (S.C. Ct. App. filed July 3,

2013). This court denied PDHC's petition for rehearing, and our supreme court later denied its petition for a writ of certiorari. The court of appeals issued a remittitur in the case on January 7, 2014.

Nine days after the remittitur was issued, on January 16, 2014, the Estate filed a motion in circuit court for sanctions—pursuant to Rule 11, SCRCP, and the FCPSA—against PDHC, Megna, Benjamin R. Matthews, and Matthews & Megna, LLC. In its motion, the Estate claimed it expended at least $96,580 in attorney's fees defending against PDHC's allegedly meritless lawsuit as well as Megna's violation of the circuit court's disqualification order. PDHC filed a motion to strike the Estate's motion for sanctions under the FCPSA, arguing the circuit court no longer had subject matter jurisdiction over the matter because the motion was untimely.

At the conclusion of a hearing on the motions, the circuit court announced it would award sanctions. The court, however, directed the Estate to submit a supplemental fee affidavit segregating the amount of time spent addressing Megna's violations of the disqualification order and filing the motion for sanctions. After the Estate submitted a fee affidavit listing $60,300 for these expenses, the court awarded it $34,150 in sanctions against PDHC, Megna, and his law firm pursuant to Rule 11. Nevertheless, the court declined to award sanctions pursuant to the FCPSA. PDHC filed a motion to alter or amend the award of sanctions, and the court denied its motion. This cross-appeal followed.

## STANDARD OF REVIEW

The decision of whether to award attorney's fees pursuant to Rule 11 or the FCPSA is treated as one in equity. *Se. Site Prep, LLC v. Atl. Coast Builders & Contractors, LLC*, 394 S.C. 97, 104, 713 S.E.2d 650, 653 (Ct. App. 2011). "In an action in equity tried by a judge alone, the appellate court has jurisdiction to find facts in accordance with its own view of the preponderance of the evidence." *In re Beard*, 359 S.C. 351, 357, 597 S.E.2d 835, 838 (Ct. App. 2004). "However, the abuse of discretion standard plays a role in the appellate review of a sanctions award." *Ex parte Gregory*, 378 S.C. 430, 437, 663 S.E.2d 46, 50 (2008). When the appellate court agrees with the circuit court's factual findings, it reviews the award of sanc-

tions under an abuse of discretion standard. *Atl. Coast Builders*, 394 S.C. at 104, 713 S.E.2d at 654. "Under the abuse of discretion standard, the imposition of sanctions will not be disturbed on appeal unless the decision is controlled by an error of law or is based on unsupported factual contentions." *Id.*; *see also Russell v. Wachovia Bank, N.A.*, 370 S.C. 5, 19, 633 S.E.2d 722, 729 (2006) ("An abuse of discretion may be found if the conclusions reached by the court are without reasonable factual support." (quoting *Runyon v. Wright*, 322 S.C. 15, 19, 471 S.E.2d 160, 162 (1996))).

## LAW/ANALYSIS

### I. PDHC's Appeal

PDHC contends the circuit court erred in failing to dismiss the Estate's motion for sanctions pursuant to Rule 11, SCRCP, because the motion was untimely and, therefore, the court lacked jurisdiction to consider it. We agree.

■ The circuit court generally "loses jurisdiction over a case when the time to file post-trial motions has elapsed." *Russell*, 370 S.C. at 20, 633 S.E.2d at 730 (footnote omitted). "Jurisdiction refers to the [circuit] court's authority to retain jurisdiction over the case, not the court's subject matter jurisdiction." *Id.* at 20 n.10, 633 S.E.2d at 730 n.10; *see also In re Beard*, 359 S.C. at 358, 597 S.E.2d at 838 (explaining the ten-day rule limiting the time within which a party may file a post-trial motion is a rule of limitation on the circuit court's ability to retain the case, not the power of the court to hear cases of that nature).

Our appellate courts have held that a circuit court cannot entertain a motion for sanctions made pursuant to the FCPSA if it is filed more than ten days after judgment. *See Russell*, 370 S.C. at 20, 633 S.E.2d at 730 (providing "a motion for sanctions must be filed within ten days of the notice of the entry of judgment"); *In re Beard*, 359 S.C. at 357, 597 S.E.2d at 838 (noting this court has held "a [circuit] court cannot entertain a motion for sanctions under the FCPSA whe[n] that motion was filed more than ten days after the judgment"); *Pitman v. Republic Leasing Co., Inc.*, 351 S.C. 429, 432, 570 S.E.2d 187, 189 (Ct. App. 2002) (finding the circuit court no longer had jurisdiction over the case to award sanctions under

the FCPSA two months after granting summary judgment and noting that, "because a [circuit court] retains jurisdiction pursuant to Rule 59(e), SCRCP, to alter or amend a judgment within ten days of its issuance, a motion for sanctions would be timely if filed within ten days of judgment").

■■■ In the instant case, however, the circuit court only granted the Estate's motion for sanctions pursuant to Rule 11, SCRCP. Rule 11(a), SCRCP, in pertinent part, provides the following:

> The written or electronic signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other paper; that to the best of his knowledge, information and belief there is good ground to support it; and that it is not interposed for delay.
>
> . . .
>
> If a pleading, motion or other paper is not signed or does not comply with this Rule, it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant. If a pleading, motion, or other paper is signed in violation of this Rule, the court, upon motion or upon its own initiative, may impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion or other paper, including a reasonable attorney's fee.

Pursuant to Rule 11, "an attorney may be sanctioned for filing a frivolous pleading, motion, or other paper, or for making frivolous arguments." *Burns v. Universal Health Servs., Inc.*, 340 S.C. 509, 513, 532 S.E.2d 6, 9 (Ct. App. 2000). "The attorney may also be sanctioned for filing a pleading, motion, or other paper in bad faith (i.e., to cause unnecessary delay) whether or not there is good ground to support it." *Id.*

> The sanction may include an order to pay the reasonable costs and attorney's fees incurred by the party or parties defending against the frivolous action or action brought in bad faith, a reasonable fine to be paid to the court, or a directive of a nonmonetary nature designed to deter the party or the party's attorney from bringing any future frivolous action or action in bad faith. Further, if appropri-

ate under the facts of the case, the court may order a party and/or the party's attorney to pay a reasonable monetary penalty to the party or parties defending against the frivolous action or action brought in bad faith.

*Runyon,* 322 S.C. at 19, 471 S.E.2d at 162.

In *Burns,* this court noted Rule 11 "provides little guidance as to the procedural guidelines to be followed prior to the imposition of sanctions under the rule. The rule merely provides that whe[n] a violation occurs, the court, upon motion or its own initiative, may impose appropriate sanctions." 340 S.C. at 513, 532 S.E.2d at 9. Notwithstanding the lack of guidance, this court held "a signing party or attorney is entitled to notice and an opportunity to respond prior to imposition of sanctions under Rule 11." *Id.* at 514, 532 S.E.2d at 9. In another case, this court indicated that "[t]he criteria for Rule 11 sanctions are essentially the same as those for sanctions under the [FCPSA]." *Father v. S.C. Dep't of Soc. Servs.,* 345 S.C. 57, 72, 545 S.E.2d 523, 531 (Ct. App. 2001). Nevertheless, our supreme court has distinguished between sanctions under Rule 11 and the FCPSA, stating no requirement exists "that a motion for sanctions made pursuant to Rule 11 be made within ten days from notice of entry of judgment." *Russell,* 370 S.C. at 20 n.11, 633 S.E.2d at 730 n.11. In *Russell,* our supreme court expressly declined to determine what time limit for Rule 11 sanctions would be proper because the issue was not before the court. *See id.* Accordingly, the issue is one of first impression for this court.

▮▮▮▮ Our supreme court has emphasized that "[t]he [South Carolina] Rules of Civil Procedure 'shall be construed to secure the just, speedy, and inexpensive determination of every action.'" *Ex parte Wilson,* 367 S.C. 7, 15, 625 S.E.2d 205, 209 (2005) (quoting Rule 1, SCRCP). "In interpreting the language of a court rule, we apply the same rules of construction used in interpreting statutes." *Green ex rel. Green v. Lewis Truck Lines, Inc.,* 314 S.C. 303, 304, 443 S.E.2d 906, 907 (1994) (per curiam). "Therefore, the words of [the rule] must be given their plain and ordinary meaning without resort to subtle or forced construction to limit or expand the rule." *Stark Truss Co. v. Superior Constr. Corp.,* 360 S.C. 503, 508, 602 S.E.2d 99, 102 (Ct. App. 2004) (alteration in original)

(quoting *Green*, 314 S.C. at 304, 443 S.E.2d at 907). "When the language of a court rule is clear and unambiguous, the court is obligated to follow its plain and ordinary meaning." *Id.*

Courts should consider not only the particular clause in which a word may be used, but the word and its meaning in conjunction with the purpose of the whole rule and the policy of the rule. In construing a rule, language in the rule must be read in a sense which harmonizes with its subject matter and accords with its general purpose.

*Ex parte Wilson*, 367 S.C. at 15, 625 S.E.2d at 209 (internal citation omitted).

Rule 11, of course, is silent as to when a party must file a motion for sanctions for it to be considered timely. Thus, we find it necessary to analyze the purposes behind the rule. Our "state rule is based upon the language of the pre–1983 version of Federal Rule 11." *Burns*, 340 S.C. at 513, 532 S.E.2d at 9. Although the current version of Rule 11 of the Federal Rules of Civil Procedure, unlike our state rule, contains a safe harbor provision, we find the U.S. Court of Appeals for the Fourth Circuit's explanation of the purposes behind the rule instructive. *Cf. Renner v. Hawk*, 125 N.C.App. 483, 481 S.E.2d 370, 374 (1997) (stating decisions pertaining to the federal version of Rule 11 are "pertinent to [the] analysis" of the state rule). "Under Rule 11, the primary purpose of sanctions against counsel is not to compensate the prevailing party, but to 'deter future litigation abuse.'" *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 151 (4th Cir. 2002) (quoting *In re Kunstler*, 914 F.2d 505, 522 (4th Cir. 1990)). The expenses opposing counsel incurs in combatting frivolous claims is an appropriate factor for a court to consider when determining whether to issue a monetary sanction. *In re Kunstler*, 914 F.2d at 522. "[O]ther purposes of the rule include compensating the victims of the Rule 11 violation, as well as punishing present litigation abuse, streamlining court dockets[,] and facilitating court management." *Moore v. Southtrust Corp.*, 392 F.Supp.2d 724, 736 (E.D. Va. 2005) (quoting *In re Kunstler*, 914 F.2d at 522).

Regarding the federal rule, scholars have made the following observations:

Although a motion for sanctions may not be filed or presented to the district court until twenty-one days have elapsed after service of the motion on the parties, the cases under both the 1983 and 1993 versions of the rule make clear that Rule 11 proceedings should be initiated promptly after the challenged conduct takes place. The Advisory Committee Note to the 1993 amendment explains that "[o]rdinarily, the motion should be served promptly after the inappropriate paper is filed, and if delayed too long, may be viewed as untimely." If the alleged misconduct occurs during the discovery process or another part of the pretrial phase, the matter usually should be resolved at once ... to avoid prejudicing the resolution of the litigation's substantive issues on their merits and to discourage the possibility of further abuses. If the challenged conduct is the institution of the action itself or occurs during a hearing or at trial, however, the question whether there has been a Rule 11 violation generally is not decided until after litigation has completed ... to avoid delaying the disposition of the merits of the case.

5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1337.1, at 713–15 (3d. ed. 2004) (alteration in original) (footnotes omitted).

■■■ Although the decision of whether to award Rule 11 sanctions is a collateral issue, and does not constitute a ruling upon the merits of the case, we do not believe a circuit court retains the ability to award sanctions in perpetuity without any limitation. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990) ("Like the imposition of costs, attorney's fees, and contempt sanctions, the imposition of a Rule 11 sanction is not a judgment on the merits of an action. Rather, it requires the determination of a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate. Such a determination may be made after the principal suit has been terminated."); *id.* at 406, 110 S.Ct. 2447 (finding the respondents' interpretation of Rule 11 to cover any expenses incurred "because of the filing" overly broad because it "would lead to the conclusion that expenses incurred 'because of' a baseless filing extend indefinitely"). Indeed, as the U.S. Court of Appeals for the Federal Circuit has noted, the "[c]ourts that have discussed the matter have endorsed the application of

time limits on Rule 11 motions." *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 875 (Fed. Cir. 2010).

Jurisdictions are split regarding the timeliness standards used for sanctions motions. Some jurisdictions, for example, impose their own local rules. *See, e.g., Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 100 (3d Cir. 1988) ("To carry out the objectives of expeditious disposition, we adopt as a supervisory rule for the courts in the Third Circuit a requirement that all motions requesting Rule 11 sanctions be filed in the district court before the entry of a final judgment. Whe[n] appropriate, such motions should be filed at an earlier time— as soon as practicable after discovery of the Rule 11 violation."). Others require a party seeking sanctions against an opponent to file the motion within a reasonable time after discovering the inappropriate conduct. *See, e.g., Griffin v. Sweet*, 136 N.C.App. 762, 525 S.E.2d 504, 506 (2000) ("Although Rule 11 does not specify a time limit for filing a sanctions motion, . . . 'a party should make a Rule 11 motion within a reasonable time after he discovers an alleged impropriety.'" (quoting *Rice v. Danas, Inc.*, 132 N.C.App. 736, 514 S.E.2d 97, 100 (1999); *Renner v. Hawk*, 125 N.C.App. 483, 481 S.E.2d 370, 374 (1997)); *Kaplan v. Zenner*, 956 F.2d 149, 152 (7th Cir. 1992) (stating "[p]rompt filings of motions for sanctions after discovery of an abuse best serve both the systemic and case-specific deterrent functions of Rule 11," and "reasonableness must serve as the guide" in determining whether a Rule 11 motion was promptly filed).

In our view, the North Carolina Court of Appeals' treatment of the timeliness issue is persuasive. In *Griffin*, our sister court held "that[,] by waiting over thirteen months after [the North Carolina] Supreme Court denied defendants' petition for discretionary review, plaintiff failed to file his motion for Rule 11 sanctions within a reasonable time of detecting the alleged impropriety." 525 S.E.2d at 508.

According to the *Griffin* court, the "plaintiff was put on notice of any alleged sanctionable conduct when defendants filed an answer to the supplemental complaint . . . and again when the trial court granted summary judgment." *Id.* Although the court explained it was "not suggesting that plaintiff's motion for Rule 11 sanctions should have been filed at the summary judgment stage," the court—applying an objec-

tive, de novo standard of review—nevertheless concluded the plaintiffs failed to file the motion within a reasonable time. *Id.*

Some courts recognize the ability of a party to file a motion for sanctions at the end of litigation or after a judgment, but we are unable to find any authority to support the proposition that a party can wait until the entire case has finished. The U.S. Court of Appeals for the Third Circuit's discussion of the negative consequences of allowing such a delay in filing a Rule 11 motion is instructive:

> Promptness in filing valid motions will serve not only to foster efficiency, but in many instances will deter further violations of Rule 11 which might otherwise occur during the remainder of the litigation. If a party's action is "abusive" as contemplated by Rule 11, [then] the adversary should be able to realize immediately that an offense has occurred. Seldom should it be necessary to wait for the district court or the court of appeals to rule on the merits of an underlying question of law. If there is doubt how the district court will rule on the challenged pleading or motion, [then] the filing of the paper is unlikely to have violated Rule 11.... [M]ere failure to prevail does not trigger a Rule 11 sanction order.

*Lingle,* 847 F.2d at 99. The Third Circuit further noted that "timely filing and disposition of Rule 11 motions should conserve judicial energies. In the district court, resolution of the issue before the inevitable delay of the appellate process will be more efficient because of current familiarity with the matter." *Id.* Moreover, the court stated that "concurrent resolution of the challenges to the merits and the imposition of sanctions avoids the invariable demand on two separate appellate panels to acquaint themselves with the underlying facts and the parties' respective legal positions." *Id.* According to the court, "[t]he fragmented appeals" in that case "graphically illustrate[d] the inefficiency resulting from delay in filing a sanction motion until after resolution of the merits appeal." *Id.*

 Because Rule 11, SCRCP, is silent regarding when a motion sought thereunder would be considered timely, we decline to read any specific time limits into the rule. We do, however, hold that a party must file a motion for sanctions pursuant to Rule 11 within a reasonable time of discovering the alleged improprieties to comport with the purposes of the

rule. Turning to the instant case, the Estate filed its motion for sanctions nine days after this court issued a remittitur.[2] In other words, the Estate waited over twenty-eight months after the circuit court granted summary judgment in its favor, and some thirty-three months after the court disqualified Megna, to file a motion for sanctions against PDHC and its counsel. In light of our thorough review of the record, as well as the various authorities addressing this issue, we find the Estate's delay in filing the motion for sanctions until final resolution of the merits appeal failed to come in line with the underlying purposes of Rule 11.

While the Estate argues that waiting until the conclusion of the case was more efficient, we respectfully disagree. The fact that this court is reviewing yet another issue in this contentious case in a separate appeal only further demonstrates the point that it was inefficient for the Estate to delay in bringing the motion for sanctions. We agree that Megna's behavior was concerning, particularly given that the law regarding his recusal was so clear. *See* Rule 3.7(a), RPC, Rule 407, SCACR ("A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness...."). The main purpose of Rule 11, however, is to deter future litigation abuse, not compensate the opposing party. By waiting until the case has been fully litigated and decided by the appellate courts on the merits, the Estate failed to challenge or prevent any litigation abuse from occurring in this case. Instead, the Estate made the tactical decision of waiting until the conclusion of the case to recover attorney's fees for all of the abuses that took place over a three-year period. In our view, the Estate's delay in bringing the motion for sanctions failed to serve the deterrence and efficiency purposes of Rule 11 and, therefore, was unreasonable.

Notwithstanding the fact that sanctions may have been warranted in this case, we hold the Estate failed to file its motion within a reasonable time of discovering PDHC's alleged improprieties. Given that the motion was untimely, we

---

**2.** As our supreme court has explained, once the remittitur is sent down from an appellate court, the circuit court acquires jurisdiction over the case to enforce the judgment and take any action consistent with the appellate court's ruling. *See Muller v. Myrtle Beach Golf & Yacht Club*, 313 S.C. 412, 414–15, 438 S.E.2d 248, 250 (1993).

are constrained to find the circuit court abused its discretion in awarding sanctions because the award was controlled by an error of law. Accordingly, we vacate the court's award of Rule 11 sanctions.[3]

## II. The Estate's Cross–Appeal

 On cross-appeal, the Estate argues the circuit court erred in concluding the Estate's claim to sanctions under the FCPSA was untimely and denying the corresponding award of fees for time spent in response to PDHC's motion to strike. We disagree.

The FCPSA, in pertinent part, provides the following:

At the conclusion of a trial and after a verdict for or a verdict against damages has been rendered or a case has been dismissed by a directed verdict, summary judgment, or judgment notwithstanding the verdict, upon motion of the prevailing party, the court shall proceed to determine if the claim or defense was frivolous.

S.C. Code Ann. § 15–36–10(C)(1) (Supp. 2015).

As discussed in Part I, *supra*, our case law is quite clear regarding the time frame within which a party must file a motion for sanctions pursuant to the FCPSA. *See Russell*, 370 S.C. at 20, 633 S.E.2d at 730 (providing "a motion for sanctions must be filed within ten days of the notice of the entry of judgment"); *In re Beard*, 359 S.C. at 357, 597 S.E.2d at 838 (noting this court has held "a [circuit] court cannot entertain a motion for sanctions under the FCPSA whe[n] that motion was filed more than ten days after the judgment"); *Pitman*, 351 S.C. at 432, 570 S.E.2d at 189 (finding the circuit court no longer had jurisdiction over the case to award sanctions under the FCPSA two months after granting summary judgment and noting that, "because a [circuit court] retains jurisdiction pursuant to Rule 59(e), SCRCP, to alter or amend a judgment within ten days of its issuance, a motion for sanctions would be timely if filed within ten days of judgment").

---

3. In light of our finding that the Estate's motion for Rule 11 sanctions was untimely, we decline to address PDHC's remaining issues on appeal. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding the appellate court need not address remaining issues when its resolution of a prior issue is dispositive).

Nevertheless, the Estate—mounting, in essence, a direct challenge to our precedent—asks us to extend the meaning of "at the conclusion of the trial" to the period following the remittitur of a case from an appellate court. We decline the Estate's invitation to adopt such an unduly expansive reading of the FCPSA. If the General Assembly wished to extend the time window to ten days following the remittitur, as opposed to ten days following judgment, then it would have included that in the list found in subsection 15–36–10(C)(1).

Accordingly, because the circuit court correctly found the Estate did not prevail on the FCPSA issue in its motion for sanctions, we affirm its denial of the corresponding award of fees for time spent in response to PDHC's motion to strike.[4]

## CONCLUSION

Based on the foregoing analysis, we **VACATE** the award of Rule 11 sanctions and **AFFIRM** the circuit court's decision not to award sanctions pursuant to the FCPSA.[5]

HUFF and THOMAS, JJ., concur.

---

4. Because our resolution of the prior issues is dispositive in this appeal, we decline to address the Estate's remaining issue. *See Futch*, 335 S.C. at 613, 518 S.E.2d at 598 (holding the appellate court need not address remaining issues when its resolution of a prior issue is dispositive).

5. We decide this case without oral argument pursuant to Rule 215, SCACR.