JUSTICE FEW :
**524 This is an appeal from the circuit court's decision to impose sanctions against Pee Dee Health Care, P.A., and its attorney **525 [1] for conduct that occurred before the circuit court entered summary judgment against it. The issue we address is whether a motion for sanctions filed nine days after remittitur from Pee Dee Health's unsuccessful appeal of the summary judgment order is untimely under the South Carolina Frivolous Civil Proceedings Sanctions Act (FCPSA) and Rule 11 of the South Carolina Rules of Civil Procedure. We find the motion was untimely under the FCPSA, but the circuit court did not abuse its discretion in finding the motion timely under Rule 11.
I. Facts and Procedural History
Pee Dee Health Care, P.A. is a medical clinic in Darlington. Doctor Hugh Thompson *761 Jr.[2] worked there as a physician from 1998 through 2001. Pee Dee Health paid Dr. Thompson a salary to treat patients, and in exchange, Dr. Thompson assigned to Pee Dee Health the right to receive all payments from the Centers for Medicare and Medicaid Services (CMS) for services Dr. Thompson provided. In 1994, four years before Dr. Thompson began working for Pee Dee Health, his medical license was suspended and he was placed on the Medicare and Medicaid excluded providers list. Although Dr. Thompson's license was reinstated in 1998, he failed to seek removal of his name from the excluded providers list until 2002. Dr. Thompson was therefore on the excluded providers list during his entire tenure at Pee Dee Health.
In 2007, six years after Dr. Thompson left Pee Dee Health, CMS discovered Dr. Thompson had been on the excluded providers list while working for Pee Dee Health, and demanded Pee Dee Health reimburse CMS for all payments it made to Pee Dee Health in connection with Dr. Thompson's services. CMS estimated the total amount of these "overpayments" to be $208,821.03 plus interest. Pee Dee Health opposed this claim through multiple levels of federal administrative appeals. The federal administrative law court found Pee **526 Dee Health "is reasonably expected to know and has an affirmative duty to know the exclusion status of its employees through due diligence prior to entering the employment relationship," and therefore found Pee Dee Health was "at fault regarding the overpayment."[3] The Medicare Appeals Council upheld this decision, finding Pee Dee Health "failed to exercise due diligence in determining [Dr. Thompson's] exclusion status during the hiring process and when completing federal application forms."
In 2010, having exhausted its federal administrative appeals, Pee Dee Health brought an action in probate court against Thompson's estate[4] seeking to recover the amount it was forced to pay to CMS. After Thompson's estate disallowed the claim, Pee Dee Health filed an amended complaint in probate court and removed the case to circuit court pursuant to subsection 62-1-302(d)(5) of the South Carolina Code (Supp. 2017). The amended complaint included twenty separate causes of action.[5]
**527 Thompson's estate sought to disqualify Pee Dee Health's attorney Tony R. Megna-who also served as Pee Dee Health's chief executive officer-on the basis that he was a necessary fact witness in the case. See Rule 3.7(a), RPC; Rule 407, SCACR ("A lawyer shall not act as advocate at a trial in which *762 the lawyer is likely to be a necessary witness ...."). The circuit court disqualified Megna.
Pee Dee Health and Thompson's estate then filed cross-motions for summary judgment. The circuit court granted summary judgment in favor of Thompson's estate, and made specific findings that there was no genuine issue of material fact regarding each of Pee Dee Health's twenty causes of action. The circuit court summed up its decision by stating,
The Court finds, as a matter of law and fact, that Pee Dee Health cannot prove an absence of fault in causing the existence of the debt being sued upon. Pee Dee Health's fault has been adjudicated with finality in federal administrative proceedings and Pee Dee Health is collaterally estopped from asserting that it is not at fault. Furthermore, under South Carolina substantive law ..., Pee Dee Health is now barred from asserting this claim-it could have easily discovered the truth of matters and it had a non-delegable duty imposed by federal law to do so.
Pee Dee Health filed a motion to alter or amend the summary judgment order, but the motion was "dismissed as improper" because the motion was filed by Megna, whom the circuit court had previously disqualified.
Pee Dee Health appealed to the court of appeals, bringing its total of pending appeals in this case to three. One of the other appeals focused on whether the circuit court erred in dismissing an appeal from the probate court before the case was removed, and the other focused on whether the circuit court erred in disqualifying Megna. The court of appeals consolidated the three appeals and issued an unpublished decision affirming in part and dismissing in part. See Pee Dee Health Care, P.A. v. Thompson , 2013-UP-311, 2013 WL 8538755 (S.C. Ct. App. filed July 3, 2013). The court of appeals denied Pee Dee Health's petition for rehearing, and this Court denied its petition for a writ of certiorari. The court of appeals issued the remittitur on January 7, 2014.
**528 Nine days later, on January 16, 2014, Thompson's estate filed a motion for sanctions against Pee Dee Health, Megna, and Megna's law firm pursuant to the FCPSA[6] and Rule 11 of the South Carolina Rules of Civil Procedure. The estate alleged Pee Dee Health pursued litigation it knew was meritless in probate court and circuit court, and alleged Megna engaged in a pattern of "abusive, manipulative, and disrespectful" conduct, much of which the estate alleged was improper because it occurred after-and in violation of-the circuit court's disqualification order. All of the alleged misconduct occurred before Pee Dee Health filed its appeal from the summary judgment order.
Pee Dee Health filed a motion to strike the estate's motion on the ground the circuit court no longer had jurisdiction, and the motion was otherwise untimely. After a hearing, the circuit court found the motion was timely under Rule 11 and issued an order imposing $34,150 in sanctions against Pee Dee Health, Megna, and Megna's law firm. In explaining its decision to impose sanctions, the circuit court stated,
This Court does not take the imposition of sanctions under Rule 11 lightly, but finds it appropriate here due to Megna's conduct in this case-specifically, his refusal to accept this Court's order disqualifying him as counsel and his unwarranted and meritless attempts to entangle uninvolved third-party attorneys in this case through inappropriate discovery requests. ... Megna's conduct has caused [Thompson's estate] to incur substantial and unnecessary legal bills, which have diminished the size of the estate, not to mention the inordinate delay in closing the estate. This conduct has also required the Court to spend significant time addressing these matters through hearings and phone conferences.
Although the court did not explicitly deny sanctions under the FCPSA, the court's order is clear the sanctions were imposed pursuant to Rule 11 only.
Pee Dee Health and Thompson's estate appealed. Pee Dee Health argued the circuit *763 court erred in finding the motion was timely under Rule 11, and challenged the sanctions order on the merits. The estate argued the motion was also timely under the FCPSA. The court of appeals affirmed the circuit **529 court's decision to deny sanctions under the FCPSA, finding the estate's motion untimely. Pee Dee Health Care, P.A. v. Estate of Thompson , 418 S.C. 557, 572, 795 S.E.2d 40, 48 (Ct. App. 2016) (citing Russell v. Wachovia Bank, N.A. , 370 S.C. 5, 20, 633 S.E.2d 722, 730 (2006) (stating "a motion for sanctions [under the FCPSA] must be filed within ten days of the notice of entry of judgment") ). As to Rule 11, the court of appeals reversed the circuit court's decision to impose sanctions, but only on the question of timeliness. 418 S.C. at 571, 795 S.E.2d at 48. The court of appeals explained that although Rule 11 did not contain a time limit, the purpose behind the Rule would be best served by a time limit that required the party seeking sanctions to file its motion "within a reasonable time of discovering the alleged improprieties." 418 S.C. at 570, 795 S.E.2d at 47 (citing Griffin v. Sweet , 136 N.C.App. 762, 525 S.E.2d 504, 506 (2000) ). Thompson's estate filed a petition for a writ of certiorari, which we granted.
II. The FCPSA
The FCPSA provides an attorney or party "shall be sanctioned for a frivolous claim or defense" if certain conditions are met. See S.C. Code Ann. § 15-36-10(C)(1)(a), (b), (c) (Supp. 2017) (listing conditions that give rise to sanctions). As to when a motion for sanctions must be filed, subsection 15-36-10(C)(1) provides,
At the conclusion of a trial and after a verdict for or a verdict against damages has been rendered or a case has been dismissed by a directed verdict, summary judgment, or judgment notwithstanding the verdict, upon motion of the prevailing party, the court shall proceed to determine if the claim or defense was frivolous.
Id. South Carolina appellate courts have interpreted this subsection to require a party to file its motion for sanctions under the FCPSA within ten days of the entry of judgment. See, e.g. , Russell , 370 S.C. at 20, 633 S.E.2d at 730 (stating "a motion for sanctions [under the FCPSA] must be filed within ten days of the notice of entry of judgment" (citing Pitman v. Republic Leasing Co. , 351 S.C. 429, 570 S.E.2d 187 (Ct. App. 2002) ) ).
**530 Here, the circuit court granted summary judgment on September 1, 2011. The estate filed its motion for sanctions under the FCPSA on January 16, 2014. The estate's motion was not timely under the FCPSA. The circuit court was correct to deny sanctions under the FCPSA, and the court of appeals was correct to affirm.
III. Rule 11
Pee Dee Health argued to the circuit court and court of appeals that the ten-day time limit applicable under the FCPSA should also apply to sanctions motions filed under Rule 11. However, Rule 11-unlike the FCPSA-does not contain any time limit for filing a motion for sanctions, and South Carolina appellate courts have never interpreted Rule 11 to include a specific time limit. In fact, in Russell , we stated, "There is no requirement that a motion for sanctions made pursuant to Rule 11 be made within ten days from notice of entry of judgment," and "we decline to address what time limit is proper with regard to the Rule 11 sanctions because the issue is not before us." 370 S.C. at 20 n.11, 633 S.E.2d at 730 n.11.
Now the question is before us. To determine if there is a time limit on the filing of a Rule 11 motion, and if so what that time limit is, we turn first to the language of the rule, which provides,
The written or electronic signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other paper; that to the best of his knowledge, information and belief there is good ground to support it; and that it is not interposed for delay.
....
*764 If a pleading, motion, or other paper is signed in violation of this Rule, the court, upon motion or upon its own initiative, may impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the **531 pleading, motion or other paper, including a reasonable attorney's fee.
Rule 11(a), SCRCP.
"In interpreting the meaning of the South Carolina Rules of Civil Procedure, the Court applies the same rules of construction used to interpret statutes." Maxwell v. Genez , 356 S.C. 617, 620, 591 S.E.2d 26, 27 (2003). If a statute or rule is "plain, unambiguous, and conveys a clear meaning, interpretation is unnecessary and the stated meaning should be enforced." Id. (citing Knotts v. S.C. Dep't of Nat. Res. , 348 S.C. 1, 558 S.E.2d 511 (2002) ). Rule 11 clearly does not include a ten-day time limit. It is not possible under our rules of construction to read a ten-day time limit into a Rule that does not contain a ten-day time limit. In respect to timing, therefore, the plain meaning of Rule 11's lack of specific time limit is that there is no specific time limit. If this Court wanted to impose such a specific time limit on Rule 11 motions, then our Constitution requires we do so through our article V, section 4A rule-making authority. See S.C. CONST. art. V, § 4A ("All rules and amendments to rules governing practice and procedure in all courts of this State promulgated by the Supreme Court must be submitted by the Supreme Court to the Judiciary Committee of each House of the General Assembly ....").
Although Rule 11 does not contain a specific time limit, the law does not allow a person to sit on legal rights indefinitely. Therefore, there are a number of important considerations a circuit court must make when determining whether a motion for sanctions under Rule 11 is untimely. The first and most important consideration is whether the court still retains jurisdiction over the case. "The jurisdiction of the circuit court to hear matters after issuance of the remittitur is well established. For instance, once the remittitur is issued from an appellate court, the circuit court acquires jurisdiction to enforce the judgment and take any action consistent with the appellate court's ruling." Martin v. Paradise Cove Marina, Inc. , 348 S.C. 379, 385, 559 S.E.2d 348, 351-52 (Ct. App. 2001) (citing Muller v. Myrtle Beach Golf & Yacht Club , 313 S.C. 412, 414-15, 438 S.E.2d 248, 250 (1993) ).
**532 There is nothing in the estate's Rule 11 motion that is not "consistent with" the court of appeals' ruling on the consolidated appeals. In particular, the Rule 11 motion was based primarily on the circuit court's order disqualifying Megna and its summary judgment order finding no merit to Pee Dee Health's claims. Both of these orders were upheld on appeal. Therefore, we find the circuit court retained jurisdiction to hear a Rule 11 motion filed nine days after remittitur.[7]
This finding is consistent with Hicks v. Southern Maryland Health Systems Agency , 805 F.2d 1165 (4th Cir. 1986), in which the Fourth Circuit found the district court retained jurisdiction to rule on a Rule 11[8] motion that was made "several months after the conclusion of all appellate proceedings."
**533 *765 805 F.2d at 1167. In Hicks , the plaintiffs filed seven separate causes of action against their employer. 805 F.2d at 1166. The district court granted summary judgment, and the Fourth Circuit affirmed. Id. In its opinion affirming the district court, the Fourth Circuit "reprimanded counsel for having asserted and prosecuted 'baseless' claims," which in turn prompted the defendants to file a motion for sanctions pursuant to Rule 11"after the conclusion of the appeal." 805 F.2d at 1166. The plaintiffs argued the district court no longer had jurisdiction to consider the motion. Id. The Fourth Circuit rejected the plaintiffs' argument, and explained that in the absence of an applicable local rule in the district, the district court had jurisdiction to consider and grant the Rule 11 motion and "the only time limitation arises out of those equitable considerations that a district judge may weigh in his discretion." 805 F.2d at 1167.
The second consideration for a circuit court to make is to analyze the timing of the motion in light of the multiple purposes of Rule 11. As the Fourth Circuit explained in In re Kunstler , 914 F.2d 505 (4th Cir. 1990), "the primary ... purpose of Rule 11 is to deter future litigation abuse." 914 F.2d at 522. However, there are additional purposes, including "compensating the victims of the Rule 11 violation, ... punishing present litigation abuse, streamlining court dockets and facilitating court management." Id. (citing White v. Gen. Motors Corp. , 908 F.2d 675, 683 (10th Cir. 1990) ).
To analyze whether the timing of the estate's Rule 11 motion is consistent with the purposes of the rule, we begin with the premise that early filing-and quick resolution-of legal claims is always to be promoted. We recognize, however, that accusing the opposing party of misconduct under Rule 11 does not always "deter future litigation abuse." In fact, the common experience of trial lawyers across the country is that accusing an opposing lawyer or party of Rule 11 misconduct will often draw "return fire."[9]
*766 That is particularly true in a **534 case where the opposing lawyer has repeatedly engaged in "vexatious" behavior that "caused ... substantial and unnecessary legal bills," and "required the court to spend significant time addressing these matters through hearings and phone conferences," as the circuit court found was true in this case. When that occurs, not only can additional future abuse be likely, but the secondary purposes of "streamlining court dockets and facilitating court management" can be frustrated by the delays that result from the litigation of sanctions motions.
As counsel for the estate explained, he based his decision to wait to file the Rule 11 motion until after remittitur in part on his goal of achieving a successful-and timely-result for his client, at the least cost to his client. Counsel explained his experience with Megna throughout the protracted litigation led him to believe that a sanctions motion would only exacerbate the already contentious litigation, further delaying a decision on the merits and costing his client more money. In other words, counsel considered the circumstances of the case and concluded that filing a motion for sanctions would not "deter future litigation abuse," but rather would only encourage more abusive behavior, which counsel determined to be **535 against his client's interests in getting the litigation resolved quickly and inexpensively.
Counsel compares the situation to a lawyer's duty to report opposing counsel's unethical behavior to the Commission on Lawyer Conduct under Rule 8.3 of the Rules of Professional Conduct, Rule 407, SCACR, and cites to a recent South Carolina Bar Ethics Advisory Opinion stating a lawyer may wait to report the misconduct "at the conclusion of the litigation or appeal," if the lawyer determines reporting the misconduct immediately would be adverse to his client's interests. "The Committee believes it is appropriate for a lawyer to consider any potential adverse impact to his or [her] client in determining the timing of a report against another lawyer." S.C. Bar Ethics Advisory Opinion, 16-04.
Counsel's considerations resonate in South Carolina. Unlike other parts of the country, the atmosphere of litigation here is relatively collegial, and it is vitally important to our profession that we maintain that atmosphere to the extent possible. We are concerned that a rule requiring a party to file a Rule 11 motion for sanctions during the course of active litigation-or else it be found untimely regardless of these valid considerations-would endanger our collegial atmosphere, unnecessarily delay the resolution of claims, and thus be inconsistent with the purposes of Rule 11. Under the circumstances of this case, we find these to be reasonable and valid considerations by the estate's counsel.
Pee Dee Health argues, however, counsel's considerations became far less important the moment the circuit court issued its summary judgment order. Though this is a valid point, we find it does not completely undermine counsel's justification for waiting. At the time the circuit court filed its decision to grant summary judgment, Pee Dee Health already had two other appeals pending at the court of appeals. The appeal of the summary judgment order made it three. Both the appeal of the circuit court's order disqualifying Megna and the appeal of the summary judgment order related directly to the basis on which the estate ultimately sought sanctions. If either order were reversed, it would undermine the estate's grounds for the sanctions motion.
**536 In addition, even if the likelihood Megna and Pee Dee Health would respond with more abusive behavior was diminished after summary judgment, it is also likely the circuit court would not have heard the sanctions motion while the appeals were pending based on the impression the motion dealt with "matters decided in the order[s]," which would arguably be stayed pending the resolution of the appeals. See Rule 241(a), SCACR (providing "the service of a notice of appeal in a civil matter acts to automatically stay matters decided in the order"). We saw this occur in Russell , where two of Judge Russell's *767 [10] children challenged his will and trust based on alleged undue influence. 370 S.C. at 10, 633 S.E.2d at 724. "After extensive discovery was conducted, the trial court granted summary judgment in favor of the defendants." 370 S.C. at 10, 633 S.E.2d at 725. Shortly after judgment was entered, several defendants filed Rule 11 motions. However, the motions were not litigated until after we affirmed the summary judgment on appeal. Id. ; see also Russell v. Wachovia Bank, N.A. , 353 S.C. 208, 225, 578 S.E.2d 329, 338 (2003) ( Russell I ). In Russell , summarizing and quoting our 2003 decision in Russell I , we stated "the record was 'devoid of any evidence that [anyone] influenced the execution or any modification of the will,' " and "there was 'no evidence to make out a prima facie case of undue influence.' " Id. (quoting Russell I , 353 S.C. at 219, 224, 578 S.E.2d at 335, 337 ). "Following remittitur," the defendants in the will contest "[sought] to enforce the no-contest clauses ... in [the] will and ... trust." Id. In the course of this post-remittitur action, the circuit court imposed over $500,000 in sanctions against one of Judge Russell's children who challenged his will and trust. 370 S.C. at 11, 633 S.E.2d at 725.
The third consideration a court should make when determining if a Rule 11 motion is untimely is embodied in the common law doctrine of laches, which we have defined as the "neglect for an unreasonable and unexplained length of time, **537 under circumstances permitting diligence, to do what in law should have been done" promptly. Jefferson Pilot Life Ins. Co. v. Gum , 302 S.C. 8, 11, 393 S.E.2d 180, 181 (1990). As we have explained, laches bars a cause of action "if a party, knowing his rights, does not seasonably assert them, but by unreasonable delay causes his adversary to incur expenses or enter into obligations or otherwise detrimentally change his position." Sloan v. Dep't of Transp. , 379 S.C. 160, 174, 666 S.E.2d 236, 243 (2008) (quoting Chambers of S.C., Inc. v. Cty. Council for Lee Cty. , 315 S.C. 418, 421, 434 S.E.2d 279, 280 (1993) ); see also Strickland v. Strickland , 375 S.C. 76, 83, 650 S.E.2d 465, 469 (2007) (stating a party seeking to defend on the basis of laches "must show that the complaining party unreasonably delayed its assertion of a right, resulting in prejudice"). In situations where the circuit court determines these elements are met, the court may find laches prevents a party from pursuing sanctions under Rule 11.
Finally, we come to the basis of the court of appeals' decision finding the motion in this case untimely-reasonableness. As a general proposition, we cannot disagree with the court of appeals' holding "that a party must file a motion for sanctions pursuant to Rule 11 within a reasonable time of discovering the alleged improprieties." 418 S.C. at 570, 795 S.E.2d at 47 (citing Griffin , 525 S.E.2d at 508 ). Other courts that have addressed the question of the timeliness of a Rule 11 motion have also imposed a reasonableness standard. See, e.g. , Muthig v. Brant Point Nantucket, Inc ., 838 F.2d 600, 604 (1st Cir. 1988) (finding the court had jurisdiction to impose sanctions after the plaintiffs voluntarily dismissed the lawsuit under Rule 41, and stating "a party should make a Rule 11 motion within a reasonable time"). We agree with the court of appeals, therefore, that a Rule 11 motion is untimely if the circuit court-considering all relevant circumstances in the context of the litigation-determines the motion was not filed in a reasonable period of time after the discovery of the alleged misconduct.
In light of all these considerations, we turn to the circuit court's decision to grant the Rule 11 motion in the face of Pee Dee Health's timeliness challenge. We review the decision for abuse of discretion.
**538 *768 Ex parte Gregory , 378 S.C. 430, 437, 663 S.E.2d 46, 50 (2008) (stating an appellate court "reviews the decision to award sanctions, as well as the terms of those sanctions, under an abuse of discretion standard").[11] First, the circuit court had jurisdiction to "take ... action consistent with the appellate court's ruling," which we find includes the estate's Rule 11 motion. Second, as we have explained, the timing of the estate's motion is not inconsistent with the purposes of Rule 11. Third, laches does not apply to this case because there is no evidence the timing of the Rule 11 motion caused Pee Dee Health to do anything different than what it otherwise would have done, or to suffer any prejudice.
Finally, again, we come back to the question of reasonableness. Counsel for the estate articulated sound reasons for not filing a Rule 11 motion while the case was pending in circuit court. Those reasons lost some of their strength after the circuit court entered summary judgment, but we cannot say they do not remain sound reasons. We are also persuaded by the fact Rule 11 permits a trial court to award sanctions "upon its own initiative," Rule 11, SCRCP, and there is no stated restriction on when the trial court must do so. Certainly it would be reasonable for a trial court that finds a party brought causes of action "without good grounds to support them"-as the circuit court found in this case-and that wishes to grant sanctions on that basis, to wait to see if its order on the merits is upheld on appeal before granting sanctions.
Considering the estate's reasons for the timing of the Rule 11 motion in the context of our clear statement in Russell "declin[ing] to address what time limit is proper," 370 S.C. at 20 n.11, 633 S.E.2d at 730 n.11, in light of the practical fact we **539 allowed post-remittitur sanctions to be imposed in that case, 370 S.C. at 11, 633 S.E.2d at 725, and in light of the trial court's apparent authority to award sanctions post-appeal "upon its own initiative," we cannot say the circuit court abused its discretion[12] in finding the estate's counsel did not act unreasonably in waiting until after the appeals were resolved before filing the Rule 11 motion.
IV. Conclusion
We AFFIRM the court of appeals' finding that the estate's motion for sanctions under the FCPSA was not timely. As to the Rule 11 motion, we REVERSE and REMAND to the court of appeals to address the merits of Pee Dee Health's appeal from the circuit court's imposition of sanctions.
BEATTY, C.J., and HEARN, J., concur. KITTREDGE, J., concurring in a separate opinion in which Acting Justice John D. Geathers, concurs.
JUSTICE KITTREDGE :
I concur in result. I write separately to present my concerns regarding the timing of Rule 11 motions under the South Carolina Rules of Civil Procedure.
I agree fully with the majority that the circuit court correctly did not award sanctions under the South Carolina Frivolous Civil Proceedings Sanctions Act (FCPSA)-the motion for sanctions was untimely. I add *769 a brief comment regarding the FCPSA as it relates to timing. The FCPSA, under section 15-36-10(C)(1), requires a party to file its motion for sanctions "[a]t the conclusion of a trial." The statute, however, is silent as to a time limit to file the motion. This Court has imposed a ten-day time limit following the entry of judgment in the trial **540 court. See Russell v. Wachovia Bank, N.A. , 370 S.C. 5, 20, 633 S.E.2d 722, 730 (2006).
Turning to the key issue before the Court, I agree with the majority that the law imposes a reasonableness standard in the timing of a Rule 11 motion. While the question is close, under the circumstances presented, I would not find an abuse of discretion in the trial court's determination of reasonableness concerning the timing of the Rule 11 motion. "The only time limitation in filing Rule 11 arises out of equitable considerations." In re Kunstler , 914 F.2d 505, 513 (4th Cir. 1990) (internal quotation marks and citation omitted). Here, equitable considerations arguably support the finding that the Estate of Thompson's Rule 11 motion for sanctions was timely. The primary consideration in support of upholding the finding of timeliness is the absence of any genuine surprise or prejudice to Pee Dee Health. Specifically, Pee Dee Health knew, or should have known, the Estate of Thompson would seek sanctions for the misconduct of attorney Megna. Indeed, one of the underlying appeals related to this very matter. As observed by the Fourth Circuit Court of Appeals, "there are countervailing considerations" to warrant a delay in filing a motion for sanctions, such as when the prevailing party changes "after the appellate procedures have run their course." Hicks v. S. Maryland Health Sys. Agency , 805 F.2d 1165, 1167 (4th Cir. 1986). Once the circuit court's findings concerning attorney Megna were upheld on appeal, the Estate acted reasonably promptly.
Therefore, while it was perhaps reasonable to delay filing the Rule 11 motion for sanctions in this case, I believe the filing of the motion nine days after the remittitur was transmitted from the appellate court to the circuit court is on the outer limits of reasonableness. As noted by the United States Supreme Court, "Although Rule 11 does not establish a deadline for the imposition of sanctions, the Advisory Committee did not contemplate that there would be a lengthy delay prior to their imposition" and, "[r]ather, 'it is anticipated that in the case of pleadings the sanctions issue under Rule 11 normally will be determined at the end of the litigation, and in the case of motions at the time when the motion is decided or shortly thereafter.' " Cooter & Gell v. Hartmarx Corp. , 496 U.S. 384, 398, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990) (quoting Advisory Committee Note on Fed. R. Civ. P. 11 ). "There may be **541 circumstances under which Rule 11 sanctions should not be granted," such as when "the motion is filed an inordinately long time after the dismissal" of a case. In re Kunstler , 914 F.2d at 513. "However, these considerations are equitable, and must be resolved on a case by case analysis. The party seeking sanctions may avoid such problems by notifying his opponent and the court of his intention to pursue sanctions at the earliest possible date." Id.
Accordingly, for matters occurring during trial court proceedings, and to ensure the opposing party receives notice at the earliest possible date, the better course of action in my judgment is to file a Rule 11 motion for sanctions not later than ten days following entry of judgment in the trial court. I take no issue with the Estate's argument that the "psychology of litigation" warranted delaying the filing of the Rule 11 motion-doing so piecemeal during trial court proceedings would have been throwing fuel on the fire. In this regard, I commend Justice Few, for he has compellingly set forth in the majority opinion the policy goals sought to be achieved in pursuing Rule 11 sanctions. Those policy considerations weigh heavily in favor of allowing a party to delay filing a Rule 11 sanctions motion, up to a point. I believe the concerns for further abusive ("return fire") conduct are essentially over once the proceedings in the trial court are concluded.
Conversely, Pee Dee Health's position that a party must promptly file a motion for *770 Rule 11 sanctions following each alleged incident of misconduct would, as the majority observes, likely delay the proceedings further, increase the costs of litigation, and invite "return fire." I do not suggest a party is foreclosed from filing a Rule 11 motion for sanctions every time a party believes a violation has occurred; such a course of action may not be wise, but the rule does not prevent it.
The better practice under these circumstances would be to file a Rule 11 motion not later than ten days following entry of judgment in the trial court. This approach would have the added benefit of allowing a Rule 11 motion to be considered in tandem with a motion for sanctions under the FCPSA. If the matters on appeal are unrelated to the motion, the trial court may proceed and address the motion. See Rule 205, SCACR ("Upon the service of the notice of appeal, the appellate court shall have exclusive jurisdiction over the appeal; ... [n]othing **542 in these Rules shall prohibit the lower court ... from proceeding with matters not affected by the appeal."). If the motion relates to the matters on appeal, then further proceedings in the trial court are stayed, pending resolution of the appeal. The point here is that the parties would have notice of any alleged sanctionable conduct as the appeal proceeds. It seems unfair to me for a party to hold Rule 11 allegations close to the vest, and assert the motion for the first time after the remittitur is transmitted to the trial court. As noted above, that potential unfairness is not present in this case and, therefore, I concur that the trial court did not abuse its discretion in finding that the Rule 11 motion was timely.
I add a final comment to the majority's reliance on the purported ability of a trial court to award Rule 11 sanctions "upon its own initiative" at any time. The majority posits that a trial court retains jurisdiction to sua sponte award Rule 11 sanctions after the remittitur is transmitted to the trial court. I categorically reject any suggestion that a trial court may, on its own initiative, award Rule 11 sanctions post-remittitur. I would hold that a trial court's authority to impose Rule 11 sanctions upon its own initiative ends ten days following entry of judgment.
Acting Justice John D. Geathers, concurs.

Pee Dee Health's appellate counsel was not involved in any of the misconduct upon which the sanctions order was based.

The court of appeals incorrectly gave to Dr. Thompson the suffix of "III" instead of "Jr." His estate, however, which is the party to this action, is named "Estate of Hugh S. Thompson," with no suffix.

The administrative law court based its decision on Title 42, Chapter 7 of the United States Code, which provides, "Any person (including an organization, agency, or other entity ...) that ... arranges or contracts (by employment or otherwise) with an individual or entity that the person knows or should know is excluded from participation in a Federal health care program ... for the provision of items or services for which payment may be made under such a program ... shall be subject, in addition to any other penalties that may be prescribed by law, to a civil money penalty .... In addition, such a person shall be subject to an assessment of not more than 3 times the amount claimed for each such item or service in lieu of damages sustained by the United States or a State agency because of such claim ...." 42 U.S.C. § 1320a-7a(a)(6) (2012).

Dr. Thompson passed away on November 5, 2009.

Those causes of action included: (1) "breach of fiduciary duty"; (2) "negligent misrepresentation based on defendant's pecuniary interest"; (3) "breach of duty of loyalty to employer"; (4) "negligence"; (5) "breach of contract"; (6) "breach of contract accompanied by a fraudulent act"; (7) "interference with contractual relations"; (8) "fraud and misrepresentation"; (9) "failure to disclose"; (10) "deliberate concealment"; (11) "professional malpractice accompanied by fraud, misrepresentation, and negligence"; (12) "money had and received"; (13) "promissory estoppel"; (14) "quantum meruit"; (15) "constructive fraud and constructive trust"; (16) "constructive fraud without scienter"; (17) "equitable indemnity"; (18) "conversion"; (19) "equitable restitution"; and (20) "civil conspiracy."

S.C. Code Ann. §§ 15-36-10 to -100 (2005 & Supp. 2017).

As the discussion following this finding demonstrates, the timeliness question is broader than simply whether the court retains jurisdiction. The court of appeals appears to have equated timeliness with jurisdiction, "agree[ing]" with Pee Dee Health that "the motion was untimely and, therefore, the court lacked jurisdiction to consider it." 418 S.C. at 564, 795 S.E.2d at 44. Equating timeliness with jurisdiction was error.

Hicks involved Rule 11 of the Federal Rules of Civil Procedure. Our Rule 11 is based on the pre-1983 version of the federal rule, see Burns v. Universal Health Servs. Inc. , 340 S.C. 509, 513, 532 S.E.2d 6, 9 (Ct. App. 2000), which also contained no time limit, see Cooter & Gell v. Hartmarx Corp. , 496 U.S. 384, 398, 110 S.Ct. 2447, 2457, 110 L.Ed. 2d 359, 377 (1990) (noting that Rule 11 contains no time limit, but stating, "District courts may, of course, 'adopt local rules establishing timeliness standards,' for filing and deciding Rule 11 motions"). The federal rule was amended in 1983 to change the standard for finding a violation from bad faith to failure to make a "reasonable inquiry" into the factual and legal bases of the filing. See Advisory Comm. Note on Fed R. Civ. P. 11, reported at 97 F.R.D. 198 (1983). The rule was amended again in 1993 to include-among other things-a safe harbor provision, which allows a party to withdraw or correct an alleged frivolous pleading or motion within twenty-days of being served with a motion for sanction. Fed. R. Civ. P. 11(c)(2). The federal rule still does not contain an explicit time limit. However, the safe harbor provision effectively prevents a party from filing a motion for sanctions after the conclusion of the case. See 2 James Wm. Moore et al., Moore's Federal Practice § 11.22[1][c] ("The 21 day, safe-harbor service requirement controls not only the earliest date on which a motion may be filed ..., it also indirectly controls the last date on which a Rule 11 sanctions motion may be filed. At the very least, a party must serve its Rule 11 motion before the court has ruled on the pleading, and thus before the conclusion of the case. Otherwise, the purpose of the 'safe harbor' provision would be nullified."). Unlike the federal rule, our Rule 11 does not have a safe harbor provision.

In 1985, we adopted a version of Rule 11 similar to the federal rule in place until 1983. See Burns , 340 S.C. at 513, 532 S.E.2d at 9 ; Rule 11, SCRCP, Note (West 1986). When the federal rule was amended in 1983, the Advisory Committee stated, "Experience shows that in practice Rule 11 has not been effective in deterring abuses." Advisory Comm. Note on Fed R. Civ. P. 11, reported at 97 F.R.D. 198 (1983). Many legal commenters have agreed with this assessment. See, e.g. , Louis P. DiLorenzo, Civility and Professionalism , N.Y. St. B.J. 8, 10 (January 1996) ("Another explanation often cited for this explosion in incivility is, in some ways, the most interesting: Rule 11.... The prospect for Rule 11 sanctions has become a justification in itself for new levels of aggressiveness."); Maryann Jones, "Stop, Think & Investigate": Should California Adopt Federal Rule 11? , 22 Sw. U. L. Rev. 337, 352-53 (1993) ("Many attorneys believe that 'Rule 11 injures the civility of litigation because it causes lawyers to impugn one another's motives and professionalism ....' At least one empirical survey shows that both lawyers and judges believe that the rule has aggravated relations among lawyers. Other studies suggest that sanctions have become but another device in a litigator's bag of tricks, an additional tactic of intimidation and harassment."); Drew Erteschik and Colin McGrath, The Rule 11 Motion: Don't Do It , (June 28, 2018), http://www.lawyersmutualnc.com/risk-management-resources/articles/the-rule-11-motion-dont-do-it (as to filing a Rule 11 motion, stating, "Stop and think before picking a fight." (citing Krantz v. Owens , 168 N.C.App. 384, 607 S.E.2d 337 (2005) (considering the circuit court's order on a Rule 11 motion filed in response to opposing party's Rule 11 motion and stating, "This adversarial battle between counsels strains the patience of this Court.") ) ).

See 370 S.C. at 10 n.1, 633 S.E.2d at 724 n.1 ("Testator served as an active judge on the United States Court of Appeals for the Fourth Circuit until his death on February 22, 1998, at the age of 92. Prior to his appointment to the federal bench, Testator served as Governor of South Carolina, United States Senator from South Carolina, and President of the University of South Carolina.").

The decision to impose sanctions is one in equity, and thus the appellate court reviews the circuit court's factual findings de novo. 378 S.C. at 437-38, 663 S.E.2d at 50. If the appellate court agrees with the factual findings, then it reviews the circuit court's decision to impose sanctions and the amount of sanctions for an abuse of discretion. 378 S.C. at 438, 663 S.E.2d at 50. We also review an equity court's procedural rulings-such as a ruling on timeliness of a Rule 11 motion-for abuse of discretion. See Stoney v. Stoney , 422 S.C. 593, 594 n.2, 813 S.E.2d 486, 487 n.2 (2018) (noting "the standard for reviewing a family court's evidentiary or procedural rulings" is "an abuse of discretion standard").

The court of appeals erred by conducting its own reasonableness analysis instead of deferring to the discretion of the circuit court. See 418 S.C. at 571, 795 S.E.2d at 48 (stating, "In light of our thorough review of the record, ... we find the Estate's delay in filing the motion for sanctions until final resolution of the merits appeal failed to come in line with the underlying purposes of Rule 11," and "In our view, the Estate's delay in bringing the motion for sanctions failed to serve the deterrence and efficiency purposes of Rule 11 and, therefore, was unreasonable.").