378 S.C. 430 (2008)
663 S.E.2d 46
Ex Parte George W. GREGORY, Jr., Appellant,
In re Annie B. Melton, guardian ad litem for Jerry Bittle, a mentally incompetent adult, Plaintiff,
v.
Gerald Malloy, Respondent.
No. 26504.
Supreme Court of South Carolina.
Heard April 2, 2008.
Decided June 16, 2008.
*432 Lawrence B. Orr, of Orr, Elmore & Ervin, LLC, of Florence, for appellant.
Desa A. Ballard and Stephanie Weissenstein, of Law Offices of Desa Ballard, of West Columbia, for respondent.
Justice MOORE.
Annie Melton filed an action against respondent, her former attorney, alleging causes of action for negligence, conversion, breach of contract, breach of contract accompanied by a fraudulent act, and constructive trust. Melton's attorneys were appellant and J. Leeds Barroll. Respondent answered and counterclaimed that the suit was frivolous and in violation of Rule 11, SCRCP, and the South Carolina Frivolous Proceedings Sanction Act, S.C.Code Ann. § 15-36-10, et seq. (2005).[1] Melton filed a motion to dismiss the counterclaims. Thereafter, respondent filed a motion for summary judgment as to Melton's causes of action.
After depositions were taken, Melton voluntarily filed a stipulation of dismissal of the complaint with prejudice. Respondent voluntarily dismissed his counterclaims and then filed a motion seeking sanctions against Melton and appellant, but not against Barroll.
*433 After a hearing, the lower court issued an order awarding respondent $27,364.31 against appellant for fees and expenses incurred in defending the Melton suit and in pursuing sanctions. Appellant appeals this award.

FACTS
In May 1999, Jerry Bittle (Bittle) was seriously injured in an automobile accident in which one person died and four additional people were injured. Bittle sustained a brain injury and is now unable to care for himself. After the accident, Bittle's elderly mother, Melton, retained respondent to represent Bittle's interests in seeking recovery for his injuries.
In June 2001, an agreement was reached on how the available insurance coverage would be allocated among the claimants. Bittle was to receive $14,868.97. Within two months, Melton and Bittle went to respondent's office to consummate the settlement. Respondent was not present. Bittle endorsed the settlement check and respondent's secretary explained that Bittle would not receive the endorsed check but he would receive another check later.
Melton called and visited respondent's office several times to determine when the settlement check would be transferred to them; however she was unable to reach him. Melton was aware there was not enough money available from the settlement to pay all of the medical bills; however, she testified she thought respondent had either kept or spent the settlement proceeds.
Melton consulted appellant in January 2004. After the above facts were related to appellant, appellant contacted the insurance agency for the at-fault party and talked with the adjuster who had handled the claim. After obtaining the settlement documents, appellant determined the settlement check was presented for payment on August 24, 2001. Appellant reviewed telephone records that revealed the number of times Melton had called respondent. Appellant also knew that Melton had sought help from a North Carolina attorney; however, seeking that attorney's help did not produce any response from respondent.
Appellant informed Melton she should file a grievance with the Office of Disciplinary Counsel because he felt that if *434 Melton filed a grievance then it might "shake [the money] loose" from respondent. Appellant prepared the letter to disciplinary counsel for Melton and also prepared a subsequent letter. At this point, appellant indicated he was waiting to see what would happen with the grievance and that he was hoping respondent would deliver the money; however, he became concerned that the statute of limitations on any claim concerning the settlement proceeds would run by the end of August 2004.
In June 2004, Melton wrote respondent a letter terminating his services for failure to account for the settlement proceeds. She then entered into a retainer agreement with appellant so that he would pursue claims for wrongfully holding the settlement funds. Appellant was to take one-third of Melton's recovery, plus any expenses were to come from Melton's portion of her recovery. Appellant associated J. Leeds Barroll as co-counsel in late July 2004.
After Barroll and appellant discussed the facts of the case, Barroll researched causes of action and drafted the complaint. Barroll asked appellant if he thought he should contact respondent but appellant did not think it would "do any good." Because respondent had not responded to Melton's requests for information regarding the funds, Barroll included the conversion action in the complaint. Barroll testified that because the statute of limitations was going to run, he felt they were in a "shoot first, ask questions later" mode. Barroll stated appellant did not initially tell him that he had been on the case since January.
Appellant testified that the basis of the claim for conversion against respondent was that respondent refused to account for the money. Appellant stated he had no knowledge that respondent had actually converted the money.
Leighton Bell, a staff writer with the Cheraw Chronicle, learned of Melton's suit against respondent when the process server personally gave the summons and complaint to him. As a result, he wrote two articles regarding the suit. He stated he spoke to appellant first and that appellant was not surprised by his call and was very helpful with the article. In one article, appellant was quoted as saying: "As an attorney [respondent] should have known he couldn't co-mingle funds," *435 and "If for some reason he couldn't disperse the check he should have put it in a separate fund. Whatever [respondent] did, he shouldn't have kept it in his pocket and collected all the interest on it."
After the action began, respondent immediately transferred the settlement proceeds from his trust account to appellant. Barroll then deposed the Medicaid agent regarding Medicaid's lien on the settlement proceeds. After the deposition, Barroll voluntarily dismissed the case with prejudice a mere seven weeks after filing. Barroll stated that if he had been involved in the case since January, as appellant had been, he would have had time to interview the Medicaid agent prior to filing a lawsuit. Barroll also acknowledged that once he requested respondent's file and reviewed it, he was able to determine that respondent had been in touch with Medicaid about reducing its lien against the settlement proceeds. Although the contact was minimal, Barroll felt it was a waste of time to proceed with the lawsuit. He indicated there was no evidence that appellant ever asked for respondent's file.
As soon as respondent transferred the money to appellant, Barroll began negotiations with Medicaid and the medical providers to compromise the liens and bills. The Medicaid lien was compromised for $3,469 and the balance of the settlement funds, after subtracting $4,956.32 in attorney fees and $1,045.15 in expenses, was paid to Melton. Melton received $5,398.50.
Respondent filed his motion for sanctions and contended that appellant had no basis for filing a claim, and in particular, the conversion claim. Respondent stated in his affidavit that he was representing Melton and Bittle for free. He stated he discussed with Melton and Bittle how to deal with all of the medical liens and that they agreed that they did not want to jeopardize Bittle's Medicaid eligibility. He requested a waiver of the Medicaid lien but was only able to obtain an agreement for reduction. He stated, even with the reduction, there would be no funds left over for Bittle.
Due to Rule 1.15 of the Rules of Professional Conduct, respondent stated he was obligated to hold the settlement funds until the disputes between the lienholders and his client *436 were resolved, a fact he explained to Bittle and Melton.[2] He informed them he may be able to recover funds for Bittle if he held the funds until the statute of limitations had expired on the medical provider liens. This method would leave only the Medicaid lien to resolve. He then held the funds per their agreement. The C.P.A. who reviewed respondent's account stated the funds never left respondent's trust account until the check was written to appellant.
Appellant testified he did not contact respondent because he thought if respondent would not respond to his clients or the North Carolina attorney, then he would not respond to him. He also felt it was unnecessary to contact respondent because he expected Disciplinary Counsel to take care of it. Appellant stated he did not get respondent's file because he did not think he would learn anything from it.
The trial court granted respondent's motion for summary judgment and found there was no dispute the funds remained in respondent's trust account from the time of the settlement until the funds were disbursed to appellant. The court concluded the cause of action for conversion was frivolous. The court did not issue a judgment against Melton because she had relied on the advice of counsel. The court found appellant had not conducted a reasonable investigation before filing the conversion suit. The court awarded respondent $27,364.31 in attorney fees and costs in defending the action and in pursuing the claim for sanctions.

Standard of Review
Pursuant to the South Carolina Constitution, an appellate court reviews findings of fact in an equity matter *437 taking its own view of the evidence. Father v. South Carolina Dep't of Soc. Servs., 353 S.C. 254, 578 S.E.2d 11 (2003). However, the abuse of discretion standard plays a role in the appellate review of a sanctions award. Id. An abuse of discretion occurs where the decision is controlled by an error of law or is based on unsupported factual conclusions. Id. For example, where the appellate court agrees with the trial court's findings of fact, it reviews the decision to award sanctions, as well as the terms of those sanctions, under an abuse of discretion standard. Id. See also Runyon v. Wright, 322 S.C. 15, 471 S.E.2d 160 (1996) (the imposition of sanctions will not be disturbed on appeal absent a clear abuse of discretion by the lower court).

ISSUES
I. Did the circuit court err by finding the suit against respondent was frivolous because insufficient investigation had been conducted by appellant?
II. Did the circuit court err by awarding attorney fees and expenses which exceeded that provided for in the Frivolous Civil Proceedings Sanctions Act?

DISCUSSION

I
Appellant argues the court erred by finding the suit against respondent was frivolous because he had sufficiently investigated the facts and circumstances related to him and found that there was a basis for the suit.
Under Rule 11(a), SCRCP, a party and/or the party's attorney may be sanctioned for filing a frivolous pleading, motion, or other paper, or for making frivolous arguments. Runyon v. Wright, 322 S.C. 15, 471 S.E.2d 160 (1996). The party and/or attorney may also be sanctioned for filing a pleading, motion, or other paper in bad faith whether or not there is good ground to support it. Id. The sanction may include an order to pay the reasonable costs and attorney fees incurred by the party or parties defending against the frivolous action or action brought in bad faith, a reasonable fine to be paid to the court, or a directive of a nonmonetary nature *438 designed to deter the party or the party's attorney from bringing any future frivolous action or action in bad faith. Id. Further, if appropriate under the facts of the case, the court may order a party and/or the party's attorney to pay a reasonable monetary penalty to the party or parties defending against the frivolous action or action brought in bad faith. Id. A court imposing sanctions under Rule 11 should, in its order, describe the conduct determined to constitute a violation of the Rule and explain the basis for the sanction imposed. Id.
The South Carolina Frivolous Civil Proceedings Sanction Act provides for liability for attorney fees and costs of frivolous suits. South Carolina Code Ann. § 15-36-10 (2005) provides that any person who takes part in the procurement, initiation, and continuation of any civil proceeding is subject to being assessed for payment of all or a portion of the attorney fees and court costs of the other party if (1) he does so primarily for a purpose other than that of securing the proper adjudication of the claim upon which the proceedings are based, and (2) the proceedings have terminated in favor of the person seeking an assessment of the fees and costs.
Section § 15-36-20 provides:
Any person who takes part in the procurement, initiation, continuation ... of civil proceedings must be considered to have acted to secure a proper purpose as stated in item (1) of Section 15-36-10 if he reasonably believes in the existence of the facts upon which his claim is based and (1) reasonably believes that under those facts his claim may be valid under the existing or developing law; or
...
(3) believes, as an attorney of record, in good faith that his procurement, initiation, continuation, or defense of a civil cause is not intended to merely harass or injure the other party.
The court correctly found that, had appellant conducted a reasonable investigation, he would have known there was no basis for the conversion action. We find it troubling that appellant was willing to speak with a news reporter and make statements that he would have known to be false if he had conducted any type of meaningful investigation. Without a *439 reasonable basis, appellant relied on his client's statements that she did not know where the settlement money was to make inflammatory statements to the newspaper, i.e. accusing respondent of commingling funds and of keeping the settlement money "in his pocket" and collecting all the interest on it.
There was evidence appellant had time to investigate whether respondent had contacted Medicaid and that he could have realized much sooner that respondent was not engaging in any wrongful conduct by holding the settlement money. In fact, the associated attorney, Barroll, had suggested to appellant that he contact respondent, but appellant refused. Had appellant spoken with respondent and relayed Melton's worries over the money, then the suit would have never been filed. Under the particular facts of this case, a simple phone call may have led to an explanation by respondent as to why the money was being held. Such a discussion between the attorneys could have prevented the grievance and suit from being filed against respondent.
We find that while an attorney or a pro se litigant does not have a duty to consult with a potential defendant prior to filing suit, before alleging conversion against an attorney for misappropriation of client funds or legal malpractice, a reasonable investigation is necessary.[3]
The above facts support the lower court's conclusions that appellant failed to properly investigate the matter prior to filing it, and that the action was frivolous. See Father v. South Carolina Dep't of Soc. Servs., supra (a party who makes a frivolous claim has committed a more egregious act than one who merely acts without substantial justification). Accordingly, the court did not abuse its discretion by awarding sanctions against appellant. See id. (abuse of discretion occurs where *440 decision is controlled by error of law or is based on unsupported factual conclusions).

II
The trial court found appellant had made a frivolous claim and levied a sanction of $27,364.31 in attorney fees and costs in defending the action and in pursuing the claim for sanctions. Appellant argues the court erred by awarding attorney fees and costs that were incurred in pursuing the claim for sanctions. Appellant argues that this portion of the award is not intended by the Frivolous Proceedings Act.
South Carolina Code Ann. § 15-36-50 (2005) of the Frivolous Proceedings Act states that, "[u]pon a finding that a person has violated the provisions of this chapter, the court shall determine the appropriate fees and costs and enter judgment accordingly." Therefore, § 15-36-50 clearly allows respondent to recover the fees and costs that were incurred in seeking sanctions pursuant to the Act. Further, we find the language of S.C.Code Ann. § 15-36-30 (2005), which entitles a person to recover attorney fees and court costs reasonably incurred in litigating the proceedings, also entitles respondent to recover the fees and costs he incurred in seeking sanctions. The language, "reasonably incurred in litigating the proceedings," contemplates the fees and costs that represent the underlying proceedings wherein respondent sought to recover the fees and costs he had to pay to defend the suit against him and the proceedings wherein respondent sought sanctions for the underlying frivolous suit. In conclusion, the trial court appropriately awarded attorney fees and costs to respondent to represent the amount he incurred in seeking the sanctions. Accordingly, the decision of the lower court is
AFFIRMED.
TOAL, C.J., WALLER and BEATTY, JJ., concur.
PLEICONES, J., concurring in a separate opinion.
Justice PLEICONES:
I concur in the result reached by the majority but am troubled by the imposition of a new duty forcing an attorney to conduct a "reasonable" investigation so as to comply with *441 § 15-36-20. In my opinion, this new responsibility places upon an attorney an additional requirement not currently required by statute. I would not create a blanket rule that precludes an attorney from obtaining a reasonable belief in the merits of a case based solely on information related to him by a client.
I agree that, based on the facts of this case, appellant filed the action primarily for a purpose other than securing the proper adjudication of the claim upon which the proceedings were based. I would affirm the lower court but see no need to impose additional duties on an attorney beyond that which is required by statute.
NOTES
[1] Section 15-36-10 was rewritten and § 15-36-20 to § 15-36-50 were repealed in 2005. The new § 15-36-10 was effective July 1, 2005, and is applicable to causes of action arising on or after that date. The instant cause of action arose before July 1, 2005; therefore, the previous statutes are applicable in this case.
[2] Rule 1.15(d) provides: "Upon receiving funds ... in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds ... that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property."

Rule 1.15(e) provides: "When in the course of representation a lawyer is in possession of property in which two or more persons ... claim interests, the property shall be kept separate by the lawyer until the dispute is resolved. The lawyer shall promptly distribute all portions of the property as to which the interests are not in dispute."
[3] The concurrence indicates that we have imposed an additional duty upon an attorney by creating a blanket rule that an attorney is precluded from obtaining a reasonable belief in the merits of a case based solely on information related to him by a client. However, we have not created such a blanket rule. Our conclusion that an attorney must conduct a reasonable investigation beyond what is related to the attorney by his client is limited to the situation where a client is alleging conversion against his or her former attorney for misappropriation of client funds or legal malpractice.