**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Phillip Francis Luke Hughes, on behalf of the Estate of Jane K. Hughes, Respondent,

v.

Bank of America National Association, Appellant.

Appellate Case No. 2018-001443

———————

Appeal From Spartanburg County
Grace Gilchrist Knie, Circuit Court Judge

———————

Unpublished Opinion No. 2021-UP-354
Submitted March 1, 2021 – Filed October 13, 2021

———————

**REVERSED AND REMANDED**

———————

Robert A. Muckenfuss, of Charlotte, North Carolina, and Elizabeth Marion Zwickert Timmermans, of Raleigh, North Carolina, both of McGuireWoods LLP, for Appellant.

D. Michael Kelly and Bradley Davis Hewett, both of Mike Kelly Law Group, LLC, and Jamie Nicole Smith, all of Columbia, for Respondent.

———————

**PER CURIAM:** In 2015, Respondent Phillip Hughes, on behalf of the estate of his mother, Jane Hughes (Jane), filed suit in circuit court for alleged "fraudulent conduct" by Appellant Bank of America. Respondent alleged that his parents, John Hughes and Jane, declined an insurance product offered by Appellant when opening a line of credit there in 2006. According to Respondent, Appellant nonetheless at some point started charging $28.40 a month, purportedly to pay for the insurance. Respondent brought an array of claims, including, *inter alia*, one under the federal Truth in Lending Act and state law claims for fraud, fraudulent concealment, and breach of contract.[1]

The case was removed to federal court on Appellant's motion. Later, Respondent sought "[d]ismissal [w]ithout [p]rejudice for its claims for fraud, fraudulent concealment, and breach of contract accompanied by fraudulent acts" because "there is controlling precedent [from the South Carolina Supreme Court] that may bar recovery for these particular claims by virtue of Jane Hughes's death." The leftover claims against Appellant were dismissed by the federal district court in an order dated February 13, 2017.

Respondent then returned to state court with a state-law action including claims for fraud, fraudulent concealment, breach of contract accompanied by a fraudulent act, violation of the South Carolina Unfair Trade Practices Act (SCUTPA), breach of fiduciary duty, and conversion, as well as a survival action. At a hearing on Appellant's subsequent motion to dismiss, Respondent conceded that dismissal of the conversion and breach of fiduciary duty claims was likely proper. Respondent told the court that "the crux of this case is to challenge the state of the law on the fraud claims." Specifically, Respondent challenged the now 80-year-old and rarely-elaborated-upon decision by our supreme court in *Mattison v. Palmetto State Life Ins. Co.* that fraud "does not come within either of the instances where a cause of action survives" under the state's survival statute. 197 S.C. 256, 261–62, 15 S.E.2d 117, 118–19 (1941).

On March 20, 2018, Judge R. Keith Kelly issued an order "grant[ing] Appellant's] Motion to Dismiss, with prejudice," holding that "the claims are barred by the doctrine of *res judicata*." The circuit court added: "In addition to *res judicata*, [Respondent]'s fraud-related claims are all barred as those claims did not survive the death of the [Respondent]'s parents; the SCUTPA statute itself does not allow [Respondent] to bring a claim in a representative capacity; and all of [Respondent]'s claims are barred by the applicable statutes of limitations." Respondent appealed.

---

[1] Jane Hughes died in 2015, seven years after her husband's death.

This court heard oral arguments in December 2020. Respondent requested and received permission to "argue against precedent" at oral arguments in that case.[2]

On March 29, 2018, Appellant filed a Motion for Sanctions against Respondent and Respondent's counsel. Appellant argued that sanctions were appropriate under Rule 11, SCRCP, and the Frivolous Civil Proceedings Sanctions Act (FCPSA) because Respondent's claims were frivolous given the existence of the fraud exception and the other objections to the initial case that Appellant had raised.[3] Respondent opposed the sanctions. Respondent argued that he "brought the action in good faith," because the effort was intended to change the law regarding the fraud exception.[4]

Judge Grace Gilchrist Knie held a hearing on Appellant's motion on June 1, 2018. On July 3, the circuit court rejected Appellant's motion for sanctions, relying on the proceedings underway in this court. "This matter is currently pending before the South Carolina Court of Appeals . . . and has not yet been fully adjudicated. Accordingly, [Appellant]'s Motion for Sanctions is untimely and premature." This appeal followed.

## ISSUES ON APPEAL

1. Did Appellant preserve for review its arguments that its motions for sanctions were not premature and untimely?

2. Are Appellant's arguments prohibited under the two-issue rule?

3. Did the circuit court err when it found the motion for sanctions under Rule 11 was premature and untimely?

4. Did the circuit court err when it found that the motion for sanctions under the FCPSA was premature and untimely?

---

[2] Our summary of the previous case is drawn largely from this court's decision in *Hughes v. Bank of America Nat'l Ass'n*, Op. No. 2021-UP-341 (S.C. Ct. App. filed September 29, 2021).

[3] Appellant additionally filed a nearly 20-page memorandum in support of its motion.

[4] Appellant and Respondent have also disputed whether the exact amount of Appellant's purported attorney's fees is plausible. That issue is not relevant to this appeal.

5. Should the circuit court have granted the motions for sanctions?

## STANDARD OF REVIEW

Appellant and Respondent disagree on the standard of review for this case. Appellant argues this court should review the case de novo. Respondent argues that the appropriate standard of review is for an abuse of discretion. We agree with Respondent.

As Respondent notes, South Carolina's appellate courts have repeatedly said that rulings regarding sanctions are equitable decisions. Recently, our supreme court reiterated the standard.

> The decision to impose sanctions is one in equity, and thus the appellate court reviews the circuit court's factual findings de novo. If the appellate court agrees with the factual findings, then it reviews the circuit court's decision to impose sanctions and the amount of sanctions for an abuse of discretion. We also review an equity court's procedural rulings—*such as a ruling on timeliness of a Rule 11 motion*—for abuse of discretion.

*Pee Dee Health Care, P.A. v. Estate of Thompson*, 424 S.C. 520, 538 n.11, 818 S.E.2d 758, 768 n.11 (2018) (emphasis added) (citations omitted). *See also id.* at 537, 818 S.E.2d at 767 ("In light of all these considerations, we turn to the circuit court's decision to grant the Rule 11 motion in the face of Pee Dee Health's timeliness challenge. *We review the decision for abuse of discretion*." (emphasis added)); *Ex parte Gregory*, 378 S.C. 430, 437, 663 S.E.2d 46, 50 (2008) (pre-2005 statute[5]) ("[W]here the appellate court agrees with the trial court's findings of fact, it reviews the decision to award sanctions, as well as the terms of those sanctions, under an abuse of discretion standard."); *Russell v. Wachovia Bank, N.A.*, 370 S.C. 5, 19, 663 S.E.2d 722, 729 (2006) (pre-2005 statute) ("On appeal, the imposition of sanctions pursuant to this rule will not be disturbed absent an abuse of discretion.").

---

[5] The FCPSA was amended in 2005. That is relevant to some parts of this suit. As a result, we will note when cases related to the FCPSA are based on the pre-2005 version of the act.

Appellant attempts to distinguish this case by highlighting the undisputed facts. Appellant then points to cases like *Goldston v. State Farm Mutual Automobile Insurance Co.*[6], *WDW Properties v. City of Sumter*[7], and *Dreher v. Dreher*[8] for the proposition that in such cases, the appropriate standard of review is de novo. However, none of these cases involved motions for sanctions, which is a specific set of equitable remedies. *See Goldston*, 358 S.C. at 166, 594 S.E.2d at 516 ("*In an action at law*, tried without a jury, the appellate court will not disturb the trial court's findings of fact unless they are found to be without evidence that reasonably supports those findings. However, '[w]hen an appeal involves stipulated or undisputed facts, an appellate court is free to review whether the trial court properly applied the law to those facts.'" (emphasis added) (citation, alteration omitted) (quoting *In re Estate of Boynton*, 355 S.C. 299, 301, 584 S.E.2d 154, 155 (Ct. App. 2003)).

Practically, there is not a great deal of difference between the two standards in analyzing the current case. Under either benchmark, because the facts in this case are clear, this court is essentially attempting to determine if the court got the law wrong. *See Gregory*, 378 S.C. at 437, 663 S.E.2d at 50 ("An abuse of discretion occurs where the decision is controlled by an error of law or is based on unsupported factual conclusions."). In any event, the correct standard to use to analyze this case is to determine whether the circuit court abused its discretion.

Additionally, to the extent we must construe statutes, "[d]etermining the proper interpretation of a statute is a question of law, and th[e appellate c]ourt reviews questions of law de novo." *Town of Summerville v. City of North Charleston*, 378 S.C. 107, 110, 662 S.E.2d 40, 41 (2008).

## LAW/ANALYSIS

We first decline the implicit invitation of both Appellant and Respondent to get involved in their feud over whether sanctions are or are not *justified* on the merits. The essence of the circuit court's ruling can be found in this paragraph of its order: "This matter is currently pending before the South Carolina Court of Appeals . . . and has not yet been fully adjudicated. Accordingly, Defendant's Motion for Sanctions is *untimely and premature*." (Emphasis added). Furthermore, despite Appellant's arguments in its initial brief, it stated in its reply brief that it "requests that the [circuit] court be reversed on this point and the matter remanded for a

---

[6] 358 S.C. 157, 594 S.E.2d 511 (Ct. App. 2004).
[7] 342 S.C. 6, 535 S.E.2d 631 (2000).
[8] 370 S.C. 75, 634 S.E.2d 646 (2006).

determination on the merits."  Therefore, the issue before this court is whether the circuit court was correct in its belief that ruling on Appellant's motion would be "untimely and premature," not whether the circuit court should have imposed sanctions if it had reached the merits.[9]  On the grounds of timeliness, the circuit court's decision was controlled by an error of law.  Therefore, we reverse the circuit court's decision and remand the case to the circuit court.

## I.    Preservation

Respondent first argues that Appellant did not preserve the issue of timeliness for appeal, claiming Appellant did not raise the issue before the circuit court and did not file a Rule 59(e), SCRCP motion afterward.  Appellant counters that it did address the issue of timeliness when requesting sanctions.  We agree with Appellant.

"South Carolina appellate courts do not recognize the 'plain error rule,' under which a court in certain circumstances is allowed to consider and rectify an error not raised below by the party." *Elam v. S.C. Dep't of Transp.*, 361 S.C. 9, 24, 602 S.E.2d 772, 780 (2004)).  "The losing party must first try to convince the lower court it . . . has ruled wrongly and then, if that effort fails, convince the appellate court that the lower court erred." *I'On v. Town of Mt. Pleasant*, 338 S.C. 406, 422, 526 S.E.2d 716, 724 (2000).  As our supreme court explained in *I'On*: "This principle underlies the long-established preservation requirement that the losing party generally must both *present his issues and arguments to the lower court* and obtain a ruling before an appellate court will review those issues and arguments." *Id.* (emphasis added).

That requirement arguably includes a duty to file a Rule 59(e) motion if necessary when the circuit court digresses from what the parties have argued and rules *sua sponte* on another issue. *Cf. Elam*, 361 S.C. at 24, 602 S.E.2d at 780 ("A

---

[9] Even if Appellant had not conceded this point, the final disposition of the merits of the motion for sanctions is best left to the circuit court, subject to review by this court and our supreme court. *Cf. Brubaker v. City of Richmond*, 943 F.2d 1363, 1374 (4th Cir. 1991) ("The district court is in the best position to determine whether sanctions should be imposed and, if so, how much. 'Familiar with the issues and litigants, the district court is better situated than the court of appeals to marshall the pertinent facts and apply the fact-dependent legal standard mandated by Rule 11.'" (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 402 (1990))).  Because of Appellant's concession on this issue, we will not address the third issue raised by Appellant, or the fifth question as we have framed it, that essentially asks this court to engage on the merits.

party *may* wish to file such a motion when she believes the court has misunderstood, failed to fully consider, or perhaps failed to rule on an argument or issue, and the party wishes for the court to reconsider or rule on it. A party *must* file such a motion when an issue or argument has been raised, but not ruled on, in order to preserve it for appellate review."). However, "[a]s long as the judge had an opportunity to rule on an issue, and did so, it is not 'incumbent upon . . . counsel to harass the judge by parading the issue before him again.'" Jean Hoefer Toal et al., *Appellate Practice in South Carolina* 185–86 (3d ed. 2016) (quoting *State v. McDaniel*, 320 S.C. 33, 37, 462 S.E.2d 882, 884 (Ct. App. 1995)).

Appellant did not file a Rule 59(e) motion in this case following the circuit court's ruling. However, Appellant *did* mention timeliness in its Memorandum in Support of Motion for Sanctions, dated May 29, 2018. The reference came in passing and in a footnote, but it was a reference: "This court retains jurisdiction to consider [Appellant]'s Motion for Sanctions despite [Respondent] appealing this Court's order on [Appellant]'s Motion to Dismiss." (Citations to rule and case law omitted.) This might well be the bare minimum of what an appellant must do to preserve an issue for appeal. But this state's jurisprudence pairs its insistence on preservation with a hesitance to make it a straitjacket. *See Herron v. Century BMW*, 395 S.C. 461, 470, 719 S.E.2d 640, 644 (2011) ("We are mindful of the need to approach issue preservation rules with a practical eye and not in a rigid, hyper-technical manner."); *cf. Atl. Coast Builders & Contractors, LLC v. Lewis*, 398 S.C. 323, 332, 730 S.E.2d 282, 287 (Toal, C.J., concurring in result and dissenting in part) (regarding two-issue rule) ("[A]n over-zealous application of appellate preservation rules denigrates the primary purpose of the judiciary, which is to serve the citizens and the business community of this state by settling disputes and promoting justice"); *id.* at 329, 730 S.E.2d at 285 (stating the majority "share[d Chief Justice Toal's] concerns about a hypertechnical application of a procedural bar to appellate arguments").

It would certainly have made the consideration of this case easier if Appellant had filed a Rule 59(e) motion asking the circuit court to reconsider its decision. But because there was *some* mention of timeliness in Appellant's arguments before the circuit court, we find that the issue was preserved. *Cf. Herron*, 395 S.C. at 470, 719 S.E.2d at 644–45 ("[B]ecause Appellant can point to *no instance* where [an issue] was properly raised or ruled upon, to disregard our issue preservation rules under these circumstances would render them meaningless." (emphasis added)).

## II.    Two-Issue Rule

Similarly, Respondent argues that the circuit court's order included at least two grounds for declining to approve sanctions, and so the appeal is not preserved pursuant to the two-issue rule. This argument is without merit.

> Under the two issue rule, where a decision is based on more than one ground, the appellate court will affirm unless the appellant appeals all grounds because the unappealed ground will become the law of the case. This [c]ourt has explained that the two issue rule is applicable in situations not involving a jury . . . .

*Jones v. Lott*, 387 S.C. 339, 346, 692 S.E.2d 900, 903 (2010) (citations and parenthetical omitted), *abrogated on other grounds by Repko v. County of Georgetown*, 424 S.C. 494, 818 S.E.2d 743 (2018).

In the current case, Respondent argues that in the seventh numbered paragraph of the circuit court's order—which came right before the paragraph declaring the motion for sanctions untimely—the circuit court laid out a second reason for its ruling. That paragraph in its entirety reads:

> [Respondent] and his counsel objected to the granting of [Appellant]'s Motion for Sanctions, arguing, in part, that the Court, when presented with the opportunity to consider the same conduct for which [Appellant] presently seeks sanctions on a prior occasion, declined to award sanctions against [Respondent] or his counsel. The [Appellant], before filing the current Motion for Sanctions, raised the same issues set forth in this motion to the Court, Judge Kelly, at the February 22, 2018, hearing on its Motion to Dismiss. Although [Appellant] raised the question of sanctions at that hearing, Judge Kelly did not impose sanctions against [Respondent] or his counsel at that time.

Respondent's reading of this paragraph as anything other than a part of the court's explanation of the history of the case is strained at best. Respondent notes that "this is the only argument made by either party that the lower court expounded upon in its Order" and later notes: "The decision to include one, but not all, of Respondent's objections in its Order—especially in light of the court's provided factual support—indicates that the lower court assigned particular relevance to the issue, obviating the need to recount the remaining arguments he asserted." Even if we agreed with

Respondent on those characterizations—and we do not—that puts far more import into the paragraph than the circuit court could reasonably have been expected to intend.

As Appellant notes, the circuit court's eighth numbered paragraph makes the reasoning for the order abundantly clear: "This matter is currently pending before the South Carolina Court of Appeals . . . and has not yet been fully adjudicated. *Accordingly*, Defendant's Motion for Sanctions is untimely and premature." (Emphasis added). We find no reason to go outside of the clear line of logic in that paragraph in an attempt to divine whether other portions of the order played into the thinking of the circuit court. For that reason, we reject Respondent's argument.

## III.    Timeliness[10]

Appellant argues that the circuit court erred in finding "untimely and premature" its motion for sanctions under the FCPSA and Rule 11, SCRCP. We agree in part, but we also agree with Respondent that Appellant has abandoned one of its arguments in this appeal.

We begin by looking at the structure of the FCPSA; we then consider whether Appellant abandoned one of its grounds for relief under the FCPSA on appeal; and finally, we consider whether the remaining claims were premature and untimely.

### A.    The Frivolous Civil Proceedings Sanctions Act

It will be helpful for our discussion of the FCPSA, and whether Appellant's arguments are timely under the act, to first consider how the act is structured and how that affects Appellant's arguments. The FCPSA begins with requirements for filings in a civil lawsuit, and outlines when *papers or arguments* in a case are frivolous. *See* S.C. Code Ann. § 15-36-10(A) (Supp. 2020). Section 15-36-10(B) lays out the potential sanctions that a party can face when subsection (A) is violated, including specifically subsection (A)(4):

> If a document is signed in violation of this section, or an attorney or pro se litigant has violated subsection (A)(4), the court, upon its own motion or motion of a party, may impose upon the person in violation any sanction which

---

[10] Because the arguments on timeliness on both statutory grounds and Rule 11, SCRCP, are linked, we consider them together.

the court considers just, equitable, and proper under the circumstances.

*Id.* at (B)(2) (Supp. 2020).

Section 15-36-10(C) then outlines the procedure for finding an *entire claim or defense frivolous* after the court has rendered its decision. The remainder of section 15-36-10 (Supp. 2020) largely deals with procedural matters, the types of sanctions that can be imposed, and other details.

Considering this format reveals the act's creation of at least two separate bases for a motion for sanctions: those under subsection (A), and those under subsection (C). The former is meant specifically to deal with filings or arguments in a civil suit. The latter is meant to deal with situations in which an entire claim or defense was unwarranted. Appellant in this case cited both subsections in its initial motion for sanctions, giving it a colorable argument that it had made an argument for both. However, it did not continue to do so before this court.

**B.     Appellant Abandons One of Its Arguments**

Respondent asserts that Appellant has abandoned its argument under subsection (C) in this appeal. We agree.

"Numerous cases have held that where an issue is not argued within the body of the brief but is only a short conclusory statement, it is abandoned on appeal." *Ellie, Inc. v. Miccichi*, 358 S.C. 78, 99, 594 S.E.2d 485, 496 (Ct. App. 2004). "[A]n argument made in a reply brief cannot present an issue to the appellate court if it was not addressed in the initial brief." *Glasscock, Inc. v. U.S. Fid. & Guar. Co.*, 348 S.C. 76, 81, 557 S.E.2d 689, 692 (Ct. App. 2001).

We have reviewed Appellant's initial brief before this court, and it appears to omit any discussion of subsection (C) of the FCPSA. This is not a mere oversight; as explained above, motions under subsection (A) and subsection (C) are not the same thing. They address different abuses of South Carolina's civil courts. Arguing that the circuit court improperly deemed one of the reasons for sanctions untimely is not the same as arguing that the circuit court improperly deemed the other reason untimely. Indeed, Appellant repeatedly commingles the concepts for the two different arguments in its brief when citing our supreme court's precedents, including cases decided under subsection (C)—but while Appellant argues in its initial brief

that Respondent violated subsection (A), it never makes the same explicit claim vis a vis subsection (C).

In its reply brief, Appellant does cite to subsection (C), but it never addresses Respondent's allegations that it abandoned the argument under subsection (C). Nor can Appellant do so. Its failure to even mention subsection (C) in its initial brief means that the argument was abandoned on appeal. *See Glasscock*, 348 S.C. at 81, 557 S.E.2d at 692 ("[A]n argument made in a reply brief cannot present an issue to the appellate court if it was not addressed in the initial brief.").

## C.     Timeliness of the Remaining Claims

We now consider whether the circuit court was mistaken in finding that the remaining arguments were untimely under the FCPSA and Rule 11, SCRCP.

"[T]his [c]ourt has held that the filing of a notice of appeal does not deprive the circuit court of jurisdiction to consider a timely post-trial motion." *Holmes v. E. Cooper Cmty. Hosp., Inc.*, 408 S.C. 138, 161, 758 S.E.2d 483, 496 (2014). "[B]ecause a trial judge retains jurisdiction pursuant to Rule 59(e), SCRCP, to alter or amend a judgment within ten days of its issuance, a motion for sanctions would be timely if filed within ten days of judgment." *Pitman v. Republic Leasing Co.*, 351 S.C. 429, 432, 570 S.E.2d 187, 189 (Ct. App. 2002).

Our research has not revealed any authority in which South Carolina courts have considered sanctions solely under subsection (A) of the post-2005 FCPSA. Appellant nonetheless relies on opinions under the former version of the statute, or those regarding subsection (C). Respondent argues that most of these cases are not relevant because of those flaws, and that the new subsection (A) is meant to mirror Rule 11, SCRCP.

Appellant emphasizes the result of *Holmes*. There, our supreme court upheld sanctions the circuit court awarded while an appeal was still pending. 408 S.C. at 160–62, 758 S.E.2d at 495–96. "Motions made pursuant to the FCPSA are post-trial motions. ***See* S.C. Code Ann. 15-36-10(C)(1) (Supp. 2012)** . . . . As such, a party has ten days after the filing of a court order to file a motion pursuant to the FCPSA." *Id.* at 160, 758 S.E.2d at 495 (emphasis added). However, unlike the remaining arguments in this case, the *Holmes* court specifically decided the issue under subsection (C). *Id.*

In *Pitman*, this court considered whether a circuit court could impose sanctions on one of the parties under the previous version of the FCPSA after the ten-day period for posttrial motions had passed. 351 S.C. at 431–33, 570 S.E.2d at 188–90. The circuit court had imposed sanctions despite the fact that the party requesting them had "waited until almost two months after the grant of summary judgment to move for sanctions under the Act." *Id.* at 432, 570 S.E.2d at 189. This court vacated the award, holding that the FCPSA's mere existence—and its relationship to equity—could not overcome the limits on the circuit court's jurisdiction:

> We cannot accept [Respondent]'s argument that because proceedings under the Act sound in equity, the trial judge retains jurisdiction to consider a motion for sanctions limited only by the equitable defenses of estoppel and laches. *Absent specific statutory language vesting the trial judge with continuing jurisdiction*, we refuse to hold that a trial judge retains jurisdiction to consider a motion for sanctions beyond ten days after entry of the judgment.

*Id.* at 432–33, 570 S.E.2d at 189–90.

While *Pitman* was decided before the 2005 amendments to the FCPSA, we note that no language in the current subsection (A) of section 15-36-10 extends the jurisdiction of the circuit court over this case. Even if we were to accept Respondent's argument that the equitable considerations that undergird Rule 11 could be imputed to subsection (A), our court has already specifically rejected the argument that the rules of equity are the appropriate limits on the court's authority.

Taken together, *Holmes* and *Pitman* suggest that a circuit court at least has the authority to issue sanctions under the FCPSA within ten days after entry of the judgment and that a circuit court might lose jurisdiction to do so after the passage of ten days. For those reasons, we conclude that the circuit court erred when it found it could not consider a motion for sanctions before the conclusion of Respondent's appeal. Because that error of law controlled the circuit court's ruling, it constitutes an abuse of discretion. *See Gregory*, 378 S.C. at 437, 663 S.E.2d at 50 ("An abuse of discretion occurs where the decision is controlled by an error of law or is based on unsupported factual conclusions.").

Respondent relies heavily on our supreme court's decision in *Pee Dee Health Care, P.A. v. Estate of Thompson*, 424 S.C. 520, 818 S.E.2d 758 (2018). In *Pee Dee*

*Health Care*, the court held that sanctions under Rule 11 could be imposed following remittitur, but that sanctions under subsection (C) of the FCPSA could not. *Id.* at 524–25, 818 S.E.2d at 760. Rejecting the arguments under the FCPSA, the court found that "South Carolina appellate courts have interpreted *this subsection* to require a party to file its motion for sanctions under the FCPSA within ten days of the entry of judgment." *Id.* at 529, 818 S.E.2d at 763 (emphasis added). However, the supreme court found that "Rule 11 clearly does not include a ten-day time limit." *Id.* at 531, 818 S.E.2d at 764. Instead, the court listed "a number of important considerations a circuit court must make when determining whether a motion for sanctions under Rule 11 is untimely." *Id.* at 531–37, 818 S.E.2d at 764–67.

However, we do not read *Pee Dee Health Care* to hold that a motion filed *before* an appeal is decided is untimely. Indeed, we find persuasive a portion of Justice Kittredge's concurrence: "The better practice under these circumstances would be to file a Rule 11 motion not later than ten days following entry of judgment in the trial court." *Id.* at 541, 818 S.E.2d at 770 (Kittredge, J., concurring).

Further, because the circuit court can timely consider sanctions under the FCPSA in this matter before an appeal, sanctions under Rule 11 can be decided in the same case. *See Russell*, 370 S.C. at 20 n.11, 633 S.E.2d at 730 n.11 (stating that because a motion for sanctions under the FCPSA was "proper[,] it is only logical that the Rule 11 motion was timely according to *Ex parte Beard. See The Father v. South Carolina Dep't of Soc. Servs.,* 345 S.C. 57, 72, 545 S.E.2d 523, 531 (Ct. App. 2001) (stating that criteria for Rule 11 sanctions are essentially the same as those for sanctions under the FCPSA).").

We understand the awkward position that could, at first glance, confront circuit courts facing similarly-situated motions for sanctions under our holding in this case. Respondent's practical argument that a circuit court could rule that a plaintiff or defendant had violated the FCPSA or Rule 11 by filing a case contrary to clear precedent, only to see our supreme court reverse that precedent, resonates with us. But we believe that concern should not govern our decision here for a couple of reasons.

First, while we have found little law from other jurisdictions on this issue, we note that federal courts have consistently taken a similar approach. *See, e.g.*, *Lancaster v. Indep. Sch. Dist. No. 5*, 149 F.3d 1228, 1237 (10th Cir. 1998) ("Attorney's fees awards are collateral matters over which the district court retains jurisdiction."); *Apostol v. Gallion*, 870 F.2d 1335, 1338 (7th Cir. 1989) ("A district court may resolve the merits while the court of appeals deliberates about bond, may

award attorneys' fees while the court of appeals addresses the merits, and so on, because there is no concurrent exercise of power on the same subject and little overlap of issues. True, a decision reversing the judgment on the merits would affect or nullify the award of fees, but the subjects are distinct."); *Langham-Hill Petroleum Inc. v. S. Fuels Co.*, 813 F.2d 1327, 1328 (4th Cir. 1987) (noting, tersely, that one party "question[ed] the jurisdiction of the district court to award attorney's fees under Fed. R. Civ. P. 11 after [the] notice of appeal has been filed. We find that the court does retain such jurisdiction.")[11]; *Masalosalo by Masalosalo v. Stonewall Ins. Co.*, 718 F.2d 955, 957 (9th Cir. 1983) ("The district court retained the power to award attorneys' fees after the notice of appeal from the decision on the merits had been filed."), *superseded on other grounds by rule*, Fed. R. Civ. P. 54 advisory committee's note to 1993 amendment; *Obin v. Dist. No. 9 of Int'l Ass'n of Machinists & Aerospace Workers*, 651 F.2d 574, 583 (8th Cir. 1981) (noting that two previous decisions of the court "served to clarify that the district courts retained jurisdiction to pass upon a claim for attorney's fees even though one of the parties has filed a notice of appeal on the merits of the litigation"); *cf. Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990) ("It is well established that a federal court may consider collateral issues after an action is no longer pending. For example, district courts may award costs after an action is dismissed for want of jurisdiction."), *superseded on other grounds by 1993 amendment to* Fed. R. Civ. P. 11.

Second, in reference to the FCPSA in particular, the legislature appears to have considered and responded to that concern. The standard under the FCPSA is not *success*, but *reasonableness*. *See Se. Site Prep, LLC v. Atl. Coast Builders & Contractors, LLC*, 394 S.C. 97, 107, 713 S.E.2d 650, 655 (Ct. App. 2011) ("We conclude the Act creates substantive rights and imposes new obligations by effectively changing the standard for imposing sanctions to a 'reasonable attorney' standard."); S.C. Code Ann. § 15-36-10(A)(4)(a)(ii) (providing for sanctions if "a *reasonable* attorney in the same circumstances would believe that under the facts, his claim or defense was clearly not warranted under existing law and that a *good faith or reasonable argument did not exist for the extension, modification, or reversal of existing law*" (emphases added)); *id.* at (C)(1)(a) (providing for sanctions if "a *reasonable* attorney in the same circumstances would believe that under the facts, his claim or defense was clearly not warranted under existing law and that a

---

[11] The Fourth Circuit Court of Appeals noted that the United States Supreme Court's holding in *White v. New Hampshire Department of Employment Security*, 455 U.S. 445 (1982), cast doubt on its own precedent that suggested the opposite. "This court is bound by the Supreme Court's reasoning in *White*." *Langham-Hill Petroleum, Inc.*, 813 F.2d at 1331.

*good faith or reasonable argument did not exist for the extension, modification, or reversal of existing law*" (emphases added)).

The wording of the statute suggests that the legislature considered that a plaintiff or defendant might make a good-faith or reasonable argument to reverse precedent, only to see the appellate courts decide that the precedent should stand nonetheless. Some legal issues are close, and the common law continues to evolve. A circuit court can timely consider prior to appeal a motion for sanctions under the FCPSA precisely because the benchmarks in the legislation do not hinge on the ultimate outcome of the litigation. Whether a litigant has made a reasonable, good-faith argument sufficient to avoid sanctions is an inquiry a circuit court should make based on the case and the facts before it.

We stress that this is a decision on the *timeliness* of Appellant's motion, not the *merits* of that motion. Whether this is a case in which Respondent's argument against precedent was reasonable—win or lose—is something that the circuit court should first have the opportunity to consider. Because of its understandable error on timeliness, the circuit court did not do that the first time. We remand this action so that it may.

## CONCLUSION

For the reasons stated above, we reverse the decision of the circuit court and remand for the circuit court's consideration of the motion for sanctions under subsection (A) of the FCPSA and Rule 11, SCRCP.

**REVERSED AND REMANDED.**[12]

**KONDUROS, GEATHERS, and MCDONALD, JJ., concur.**

---

[12] We decide this case without oral argument pursuant to Rule 215, SCACR.